# UNITED STATES COURT OF APPEALS
## *for the*
## SIXTH CIRCUIT

| | | |
|---|---|---|
| **MARINA DEBITY,** | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | |
| | ) | |
| **vs.** | ) | No. 24-5137 |
| | ) | |
| **MONROE COUNTY, TN BOARD** | ) | *Appeal from the United* |
| **OF EDUCATION,** | ) | *States District Court for the* |
| | ) | *Eastern District of Tennessee* |
| **Defendant-Appellee.** | ) | |

---

## BRIEF OF PLAINTIFF-APPELLANT MARINA DEBITY

---

JESSE D. NELSON (TN BPR # 025602)
CLINT J. COLEMAN (TN BPR # 038413)
NELSON LAW GROUP, PLLC
*Attorneys for Appellant*
10263 Kingston Pike
Knoxville, Tennessee 37922
(865) 383-1053
jesse@NLGattorneys.com
clint@NLGattorneys.com

ORAL ARGUMENT REQUESTED

## CORPORATE DISCLOSURE FORM

1.    Is Appellant a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

**No.**

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

**No.**

# TABLE OF CONTENTS

CORPORATE DISCLOSURE FORM ..................................................... i

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES................................................................. iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..........................1

JURISDICTIONAL STATEMENT ....................................................... 2

STATEMENT OF THE ISSUES ......................................................... 3

STATEMENT OF THE CASE................................................................ 4

SUMMARY OF THE ARGUMENT ....................................................10

ARGUMENT ................................................................................... 20

    1. The trial court applied an incorrect legal standard in concluding that the jury's verdict was a special verdict rather than a general verdict with questions. ....................................... 20

    2. Federal Rule of Civil Procedure 60 provides another basis on which the district court should have granted Ms. Debity's motion for new trial based on the inconsistency. ...................................41

    3. The district court erred in refusing to enter judgment for Ms. Debity as to Defendant's affirmative defense under the Equal Pay Act, or in the alternative, by denying her a new trial. ..................... 45

CERTIFICATE OF COMPLIANCE ....................................................57

CERTIFICATE OF SERVICE.............................................................. 58

DESIGNATION OF DISTRICT COURT DOCUMENTS.................... 60

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Albemarle Paper Co. v. Moody,*
      422 U.S. 405, 418 (1975) ........................................... 36

*Anthony v. Gator Cochran Constr., Inc.,*
      702 S.E.2d 139, 140 (Ga. 2010) .................................... 41

*Antoine v. Atlas Turner, Inc.,*
      66 F.3d 105, 108 (6th Cir.1995) .................................... 41

*Bahamas Agr. Indust. Ltd. v. Riley Stoker Corp.,*
      526 F.2d 1174, 1183 (6th Cir. 1975) ............................... 15, 25, 43

*Beck-Wilson v. Principi,*
      441 F.3d 353 (6th Cir. 2006) ..................................... 11, 17, 45, 48

*Bills v. Astine,*
      52 F.3d 596, 605 (6th Cir. 1995) .................................. 12

*C.I.R. v. Schleier,*
      515 U.S. 323 (1995) ................................................ 36

*Corning Glass Works v. Brennan,*
      417 U.S. 188, 205 (1974) .......................................... 19, 46

*Custer v. Terex,*
      196 Fed. Appx. 733, 739 (11th Cir. 2006) ......................... 16

*Davis v. Yovella,*
      110 F.3d 63 (6th Cir. 1997) ....................................... 26, 28

*Dixie Ohio Exp. v. Poston,*
      170 F.2d 446, 448 (5th Cir. 1948) ................................. 42

*Freeman v. Chicago Park District,*
      189 F.3d 613, 615 (7th Cir. 1999) ................................. 29, 30

*Ford v. County of Grand Traverse,*
      535 F.3d 483, 490 (6th Cir. 2008) ............................................ 40

*Freed v. Thomas,*
      976 F.3d 729, 741 (6th Cir. 2020) ............................................ 40

*Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat,*
      289 F.3d 434, 437 (6th Cir. 2002) ............................................ 41

*Gray v. Toshiba Am. Consumer Products, Inc.,*
      263 F.3d 595 (6th Cir. 2001) .................................................... 46

*Grover Hill Grain Co. v. Baughman-Oster, Inc.,*
      728 F.2d 784, 792–93 (6th Cir. 1984) ..................................... 52

*Heil Co. v. Evanston Ins. Co.,*
      690 F.3d 722, 728-29 (6th Cir. 2012) ...................................... 37

*Holloway v. McIntyre,*
      838 F.2d 471 (6th Cir. 1988) ..........................................27, 35, 40

*Hopkins v. Coen,*
      431 F.2d 1055, 1059 (6th Cir. 1970) ........................ 15, 25, 44, 45

*Hubbell v. FedEx SmartPost, Inc.,*
      933 F.3d 558, 574 (6th Cir. 2019) ............................................ 44

*In re Ferro Corp. Derivative Litigation,*
      511 F.3d 611, 623 (6th Cir.2008) ....................................... 20, 43

*Johnson v. Howard,*
      24 Fed. Appx. 480 (6th Cir. 2001) ........................................... 35

*Karl v. Burlington N. R. Co.,*
      880 F.2d 68, 73 (8th Cir. 1989) ............................................... 37

*Korte v. Diemer,*
      909 F.2d 954, 958-59 (6th Cir. 1990) ...................................... 46

*Kovacevich v. Kent St. Univ.*,
    224 F.3d 806, 828 (6th Cir. 2000) ..................................... 17, 46

*Mercado v. Ahmed*,
    974 F.2d 863, 866 (7th Cir. 1992) ............................................ 42

*Mosby-Meachem v. Memphis Light, Gas & Water Div.*,
    883 F.3d 595 (6th Cir. 2018)......................................................47

*Neely v. Fox of Oak Ridge, Inc.*,
    No. 3:05-C-V304, 2006 WL 2076797 (E.D. Tenn. July 24,
    2006)....................................................................32, 33, 34, 35

*Nolfi v. Ohio Ky Oil Corp.*,
    675 F.3d 538 (6th Cir. 2012) .................................................... 46

*Palmeri v. Goodwill Indus. of Middle TN*,
    No. 3:17-cv-00901, 2018 WL 4030571, at *6 (M.D. Tenn. Aug.
    23, 2018) ................................................................................ 48

*Phillips Chem. Co. v. Hulbert*,
    301 F.2d 747, 751 (5th Cir.1962) ............................................. 44

*Portage II v. Bryant Petroleum Corp.*,
    899 F.2d 1514, 1520 (6th Cir. 1990) . 12, 13, 21, 22, 23, 24, 26, 35

*Radvansky v. City of Olmsted Falls*,
    496 F.3d 609, 618 (6th Cir.2007) ................................. 20, 37, 38

*Reider v. Philip Morris USA, Inc.*,
    793 F.3d 1254, 1259 (11th Cir. 2015) .............................27, 38, 44

*Special Learning, Inc. v. Step by Step Academy, Inc.*,
    708 Fed Appx. 842, 846 (6th Cir. 2017).................................... 38

*Team Contractors, LLC v. Waypoint Nola, LLC*,
    976 F.3d 509 (5th Cir. 2020) ....................................................10

*Turyna v. Martam Const. Co., Inc.*,
    83 F.3d 178 (7th Cir. 1996)....................................................... 28

*United States v. Pauley,*
  321 F.3d 578, 581 (6th Cir.) ........................................................ 20

*Washington County v. Gunther,*
  452 US 161, 191 (1981) ..........................................................17, 19

*Watts v. United Parcel Service,*
  378 Fed. Appx. 520, 535 (6th Cir. 2010) ..................................37

*Wolff v. Allstate Life Ins. Co.,*
  985 F.2d 1524, 1533 (11th Cir. 1993) ....................................... 42

*Zack v. C.I.R.,*
  291 F.3d 407 (6th Cir. 2002) .................................................... 52

## Statutes & Court Rules

29 U.S.C. § 206(d) ........................................................... 2, 19

Tenn. Code Ann. § 49-3-306. ............................................. 6

Fed. R. Civ. P. 49 ...............................10, 15, 21, 24, 25, 44

Fed. R. Civ. P. 60 ...............................................................41

## Other Authorities

49 C.J.S. Judgments § 62 ................................................. 42

75B Am. Jur. 2d Trials § 1444 (May 2023) .................... 12, 13

75B Am. Jur. 2d Trial § 1481 (Feb. 2024) ........................ 43

Federal Trial Handbook: Civil § 25:1 (2023-2024 Edition) ...............21

Federal Trial Handbook: Civil § 25:4 (2023-2024 Edition)............. 26

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Ms. Debity respectfully requests oral argument. The issues implicate important public policy that seeks to eliminate sex-based pay disparities as well as the right to have a jury return a verdict on which judgment properly and faithfully may be entered.

# JURISDICTIONAL STATEMENT

The Eastern District of Tennessee had jurisdiction of this matter pursuant to 28 U.S.C. § 1331 because the claims arose under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(b), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because it arises from a final judgment of the United States District Court for the Eastern District of Tennessee, which was entered on May 26, 2023, as well as the Memorandum and Order entered on January 26, 2024, denying Ms. Debity's Motion to Set Aside Judgment and For a New Trial, or in the Alternative, for Judgment Notwithstanding the Verdict (Judgment, RE 66; Mem. Op., RE 84).  Ms. Debity timely appealed on February 15, 2024.  (Not. of Appeal, RE 85).

## STATEMENT OF THE ISSUES

**1.**  Did the court err in entering judgment for the defendant based on the jury's inconsistent findings that defendant proved its affirmative defense and did not retaliate against Ms. Debity while simultaneously finding that Ms. Debity suffered a legal injury and completed questions that its "verdict [was for the Plaintiff"?

**2.**  Did the trial court err by failing to enter judgment in Ms. Debity's favor or refusing to grant her a new trial when the evidence at trial was legally insufficient to sustain a defendant's heavy burden of proof under the Equal Pay Act's fourth affirmative defense?

## STATEMENT OF THE CASE

This is an unequal pay case.  Ms. Debity filed her lawsuit against the Monroe County (Tennessee) Board of Education alleging sex discrimination stemming from the disparate salary Defendant offered her versus the salary Defendant was paying a lesser qualified male, Matthew Ancel, who held the same job.  (Compl., RE 1, Page ID # 1). She also alleged that Defendant retaliated against her when it withdrew her job offer after she reported the discriminatory basis on which Defendant calculated her salary vis-à-vis Ancel's.  *Id.*

Ms. Debity worked for Defendant as a Special Education teacher since 2008.  (Tr.-Vol. II, RE 78, Page ID # 1342-43).  In 2018 she enrolled in a postgraduate program to obtain her EdS (Educational Specialist) degree in School Psychology. *Id.*  To graduate, students must complete one year of a school psychology internship.  (*Id.* at Page ID # 1347).  Although Ms. Debity was already Defendant's employee, she went through Defendant's standard interview process required of other prospective psychology interns, and Defendant selected her for the 2020-2021 school year.  (*Id.* at Page ID # 1348).  Ms. Debity was not required to resign her existing position and did not lose her tenure rights as a longtime special education teacher.  (*Id.* at Page ID # 1349).

Near the end of her internship, Debity asked Director of Special Education Trey Ferguson – Debity's longtime supervisor – whether he anticipated an opening for a School Psychologist for the upcoming school year. (*Id.* at Page ID # 1351-52). Ferguson said he did; he said he included an additional School Psychologist position[1] in the next year's budget that was soon to be voted on by the school board. *Id.* He told Debity "she [was] welcome to apply" for the new position. (Ferguson Dep., RE 37-1, Page ID # 186).

The board adopted the budget with the new position, and the superintendent authorized Ferguson to formally post the job and begin accepting resumes. (Tr.-Vol. II, RE 78, Page ID # 1355-56). Debity saw the posting on the school system's website and submitted her application. (*Id.* at Page ID # 1359). She also applied at surrounding districts in case Defendant did not select her. *Id.*

The State of Tennessee requires local school districts to utilize a salary table for licensed personnel. (*Id.* at Page ID # 1346). The table must provide a base salary for personnel with a bachelor's degree and

---

[1] Technically, the new position was not for a School Psychologist but rather a new lead position. Ferguson planned to promote a current school psychologist into that role thereby creating the vacancy at issue.

zero years of experience and then reflect graduated increases based on years of licensure and educational attainment. Tenn. Code Ann. § 49-3-306. At the time Debity was applying for School Psychologist positions, she had twelve (12) years creditable experience and completed the advanced Educational Specialist postgraduate degree. (Tr.-Vol. II, RE 78, Page ID # 1379).

Debity was in high demand. Two adjoining districts offered her a School Psychologist position. (*Id.* at Page ID # 1364-65). Both offers placed Debity at the proper step of the state-required salary table. *Id.*

Ferguson also offered her the open position. However, he set her salary at Step 0. (*Id.* at Page ID # 1360). Defendant rarely had the allotted number of School Psychologists, but he knew Debity wanted to remain in Monroe County Schools, that her husband worked for MCS as a principal, and her children attended MCS, so he assumed she would accept the offered salary. (*See, e.g.*, Ferguson Dep., RE 37-1, Page ID # 186-87).

Debity asked Ferguson to place her on the correct salary step just as the other districts had done.[2]  (Tr.-Vol. II, RE 78, Page ID # 1360-61).  Ferguson responded by offering to place her at Step 1.  (*Id.* at Page ID # 1361-62).  Debity pointed out that Ferguson had credited Matthew Ancel his full teaching experience (which was five years - approximately half of Debity's).  (*Id.* at Page ID # 1361).

Ferguson denied that Ancel was paid at Step 5.  *Id.*  Yet, in what he considered an act of benevolence, he agreed to place Debity at Step 3, still two steps lower than Ancel and nine steps lower than her actual creditable experience.  (Ferguson Dep., RE 37-1, Page ID # 189).  He told Debity that Dr. Windsor, the superintendent, would not allow him to offer her a salary above Step 3.[3]  (*See, e.g.*, Ferguson Em., RE 37-12, Page ID # 253).  In response, Debity penned a respectful email to Dr. Windsor requesting a meeting to discuss the pay disparity between Ancel and her.  (Debity Ems., RE 37-6, Page ID # 244-245).  Dr. Windsor rejected the request.  (Tr.-Vol. II, RE 78, Page ID # 1369).

---

[2] Except, however, she agreed to compromise at Step 6, which counted only half of her applicable experience, (*see, e.g.*, Ferguson Dep., RE 37-1, Page ID # 188) instead of the full credit Ancel received.

[3] This was false.  Ferguson now admits and Windsor affirms that the decision was Ferguson's, not Dr. Windsor's.  (*See, e.g.*, Tr.-Vol. III, RE 79, Page ID # 1503-04)

7

The case was tried before a jury in May 2023.  Both parties moved for directed verdict pursuant to Fed. R. Civ. P. 50, and the Court denied each motion.  (*See, e.g.*, Mem. Op., RE 84, Page ID # 1698).

As the Courtroom Deputy began to announce the jury's verdict, the court, having viewed the verdict form, suddenly and without explanation called a recess.  (Tr.-Vol. IV, RE 70, Page ID # 944-45). When proceedings resumed 20 minutes later, the courtroom deputy read the verdict form.  (*Id.* at Page ID # 945-46).  The jury checked "yes" on the question of whether Defendant used a lower scale in setting Debity's salary than Ancel's, but also checked "yes" that Defendant showed the disparity was due to a factor other than sex.  (Verdict Form, RE 61, Page ID # 341-42).  The jury checked "no" as to whether Debity established her retaliation claim.  *Id.*  On question 3 – the amount of damages attributable to Defendant's illegal conduct – which was only to be answered "if your verdict is for the plaintiff" – the jury awarded Ms. Debity $50,000 in back pay, $139,171.50 in front pay, and $5,875 in compensatory damages.  *Id.*

Without looking to or addressing the parties, the Court polled the jury and immediately dismissed them.  (Tr.-Vol. IV, RE 70, Page ID # 947-48).

8

In the dialogue that followed the jury's dismissal, the Court noted the jury's inconsistent verdict. (*Id.* at Page ID # 948-49). When the court asked Debity's counsel to opine, counsel's first words were, "Motion for a new trial, but I guess that's something we'll have to do [since the jury has left]." (*Id.* at Page ID # 949). The Court advised that it would not enter a judgment on the verdict due to the inconsistency; it reversed course and did so the following day. (*Id.* at Page ID # 951; Judgment, RE 66).

As for the verdict form itself, the parties filed a stipulated form six weeks before trial. (Parties' Verdict Form, RE 49). Not until after the court adjourned the trial did the parties notice that the Court had changed the verdict form they had earlier submitted. The form used by the court did not tell the jury to stop answering if certain earlier findings were made. (*Compare* Parties' Form, RE 49, *with* Jury's Form, RE 61). The improper jury form may have facilitated the inconsistent verdict returned by the jury, but the verdict was inconsistent regardless, which the court noted.

## SUMMARY OF THE ARGUMENT

The first issue in this appeal is that the district court erred in entering judgment on an inconsistent verdict and/or thereafter denying Ms. Debity a new trial.  The *way* the court reached this error is by applying an incorrect legal standard and thus mischaracterizing the jury's verdict as a special verdict, whereby the jury's findings were simply findings of fact and not findings of law.  (Mem. Op., RE 84, Page ID # 1692). By so doing, the Court was able to avoid Rule 49(b)'s directive that judgment not be entered when the jury returns an inconsistent verdict and/or that a new trial be granted.  Fed. R. Civ. P. 49(b).

A related but distinct error is the court's conclusion that it could simply disregard the jury's finding of a legal injury for the sole purpose of making the verdict appear consistent.  (Mem. Op., RE 84, Page ID # 1696).  Again, the *way* it erred was by concluding that the jury's finding of a legal injury was simply a recognition that Debity was harmed, *not* a finding that Defendant's illegal conduct caused the harm.  *Id.*  But neither the court's instructions nor the jury verdict form allowed such an advisory opinion.  *See, e.g., Team Contractors, LLC v. Waypoint Nola, LLC*, 976 F.3d 509, 514 (5th Cir. 2020) ("[Trial court's discretion] is not unbounded.  It is controlled by what was before the jurors[.]").

The effect of these errors is that the district court improperly entered judgment on the jury's verdict, or in the alternative, erred in failing to grant Ms. Debity a new trial.

The second issue on appeal is the trial court's error in denying Ms. Debity's motion for judgment in her favor as to Defendant's affirmative defense under the Equal Pay Act – specifically the "any other factor than sex" affirmative defense.  The evidence in the record, viewed in the light most favorable to Defendant, establishes as a matter of law that Defendant did not meet what this Court holds is a "heavy" burden of proof.  *Beck-Wilson v. Principi*, 441 F.3d 353 (6th Cir. 2006).  The undisputed decisionmaker, Trey Ferguson, testified as to the decisions he made, when he made them, and the accuracy of the relevant documents.  (*See* Tr.-Vol. I, RE 77, Page ID # 1070-1222).  Against this record, judgment cannot be entered in favor of an employer – the party with the heavy burden of proof – whose defense rests solely on a generic denial that the discrimination was intentional.  *Beck-Wilson*, 441 F.3d at 365 (affirmative defense "does not include literally *any* other factor" but instead one chosen for legitimate purpose) (emphasis in original).

1.    **The district court erred in holding that the verdict was a special verdict rather than a general verdict with questions.**

The trial court held, "[T]he verdict form used in this case was a special verdict form because it asked the jury to determine issues of fact . . . – not questions of law." (Mem. Op., R.E. 84, Page ID # 1692). This is clear error.

When a court seeks only a special verdict, the court is not to instruct the jury as to the law or the claim's legal elements and does not allow the jury to decide when a party prevails. *See, e.g.*, *Bills v. Astine*, 52 F.3d 596, 605 (6th Cir. 1995).

The antithesis of a special verdict is a general verdict, which *only* says who wins and what remedy the party is entitled to. *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514 (6th Cir. 1990). Most often, a form seeking a general verdict contains only a checkbox for finding in plaintiff's favor or defendant's favor, and if for plaintiff, a blank line for the total sum of combined damages. *See, e.g.*, 75B Am. Jur. 2d Trials § 1444 (May 2023) (describing verdict types and collecting cases). A general verdict form does not reveal anything about the jury's rationale, only its final conclusion. *See id.*

The third type of verdict is distinct from the other two but somewhat of a hybrid – a "general verdict with questions," which is addressed in Federal Rule of Civil Procedure 49(b). *Portage II*, 899 F.2d at 1520. Unlike a special verdict, a general verdict with questions *does* require the court to instruct the jury on the law and *does* require the jury to resolve questions of law and/or mixed questions of law and fact. *Id.* The verdict is "general" insofar as it says who wins, but it requires the jury to answer questions both as to liability and the damages stemming therefrom. *See, e.g.*, 75B Am. Jur. 2d Trials § 1444 (May 2023).

In this case, the jury's verdict was a general verdict with questions because the court fully instructed the jury as to every legal element, the parties' respective burdens of proof, applicable legal terms used in the statutes (EPA and Title VII), and the various categories of damages the law provides if a legal violation is found. (*See, e.g.*, Tr.-Vol. III, RE 82-1, Page ID # 1656-57). Notably, Defendant did not dispute in the court below Ms. Debity's characterization of the verdict as a general verdict with questions. (Def's Resp. to Mot., RE 82, Page ID # 1648).

The lower court, however, held that the jury returned a special verdict – making <u>no</u> determinations of law. (*But compare* Tr.-Vol. III, RE 82-1, Page ID # 1657-58, "Your second duty is to take the law that I

13

give you, apply it to the facts[,] and decide [who wins]," *with* Mem. Op.,
RE 84, Page ID # 1692, "[T]he Court finds the verdict form used in this
case was a special verdict form[.]"). The lower court clearly applied an
incorrect legal standard.

> **2.    The trial court's reliance on the incorrect legal
>    standard spawned its error that it could disregard the
>    jury's conclusion that Debity suffered a legal injury.**

Based on its erroneous conclusion that the jury's verdict reflected
only factual findings, not the product of its application of law to the
evidence, the trial court held that it had authority to accept the jury's
findings as to liability and ignore the jury's findings as to Debity's legal
injury, so as to force the verdict into a state of consistency. However,
Rule 49(b) does not authorize such an action; rather, one provision of
the rule expressly disallows it. Rule 49(b)(4) says:

> When the answers are inconsistent with each other and one
> or more is also inconsistent with the general verdict,
> **judgment must not be entered;** instead, the court
> **must** direct the jury to further consider its answers and
> verdict, or **must** order a new trial.

Fed. R. Civ. P. 49(b)(4) (emphasis added). The Sixth Circuit has held
that when a jury's answers are inconsistent, "the trial judge is permitted

only to return the jury for further consideration of its answers and verdict, or to order a new trial.  <u>Rule 49(b) gives the trial judge no authority to enter judgment for any party in this situation</u>." *Bahamas Agr. Indust. Ltd. v. Riley Stoker Corp.*, 526 F.2d 1174, 1183 (6th Cir. 1975).  *See also Hopkins v. Coen*, 431 F.2d 1055, 1059 (6th Cir. 1970) ("[W]here verdicts in the same case are inconsistent on their faces, indicating that the jury was either in a state of confusion or abused its power, a motion to alter or amend a judgment, for new trial, or for relief from the judgment, if timely made, is not discretionary.").

Furthermore, the court's instructions to the jury were clear that such an inconsistent finding was *not* permissible under the law.  The court's instructions leave no room for argument that the jury's role as to damages was to "put[] the plaintiff in the same economic position she would have been in <u>but for the unlawful employment action</u>."  (Tr.-Vol. III, RE 82-1, Page ID # 1673).  It further instructed that "<u>if you find in favor of the plaintiff</u>, then you must set an amount of money that will fairly and justly compensate her for the wages and benefits she reasonably would have earned <u>if she had not been discriminated and/or retaliated against by the defendant</u>, as well as other economic losses she suffered <u>because of the unlawful employment action</u>."  (*Id.,* at Page ID

# 1673-74).  These conditions must be viewed in the context of the court's admonition that <u>all</u> instructions are equally important and must be followed in toto.  (*Id.*, Page ID # 1657).

The trial court was not permitted to assume the jury ignored its clear, reiterated instructions, and/or to then decide which of the jury's legal findings to accept and which to disregard simply to avoid the obvious inconsistency.  *See, e.g.*, *Custer v. Terex*, 196 Fed. Appx. 733, 739 (11th Cir. 2006) ("It would do just as much violence to the jury's factual findings to give primacy to its answer on the liability issue, ignoring its response on damages, as it would to do the reverse.").

The court's entry of judgment in favor of Defendant and subsequent denial of her motion for new trial must be REVERSED and the matter remanded for a new trial.

> **3.    Even if the verdict were not fatally inconsistent, Defendant did not, as a matter of law, meet its heavy burden of proof on its affirmative defense, so the judgment is against the weight of the evidence and would produce a seriously erroneous result.**

The EPA and Title VII both prohibit paying women less than men for performing the same job.  However, the EPA was designed to expand

and strengthen Title VII's prohibitions related to sex-based pay disparities. *See Washington County v. Gunther,* 452 US 161, 191 (1981) (Rehnquist, J., Dissenting); *Kovacevich v. Kent St. Univ.*, 224 F.3d 806, 828 (6th Cir. 2000).

The most significant distinctions between the EPA and Title VII relate to the "intent" element and the parties' respective burdens of proof. Title VII prohibits intentional discrimination, whereas an intent to discriminate is not an element of an EPA claim. *Beck-Wilson v. Principi*, 441 F.3d 353 (6th Cir. 2006). And whereas Title VII follows the familiar *McDonnell Douglas* burden-shifting paradigm, the EPA does not. (*Id.* at 365).

Once a plaintiff establishes a prima facie case under the EPA, a defendant may escape liability *only* if it *proves* one of four affirmative defenses, which in our case is affirmative defense number four – "any other factor than sex." *Id*.

Defendant does not dispute the prima facie elements of Ms. Debity's claim. Therefore, she is entitled to judgment as a matter of law unless the evidence at trial was sufficient to sustain Defendant's affirmative defense.

Viewing all evidence in Defendant's favor, the jury could not have found evidence sufficient to sustain Defendant's affirmative defense. At best, Defendant established that Ferguson only allocated $60,000 in his budget for the position he offered Debity, that the job posting was for an additional position rather than a vacated one, and he had an unexpected need to replace a retiring teacher about which he learned about *after* salary discussions with Debity had ended. (Tr.-Vol I, RE 77, Page ID # 1159, 1211).

As a matter of law, these facts are incapable of allowing an employer to escape the EPA. *Beck-Wilson*, 441 F.3d at 353. If they could, liability could be avoided simply by pointing to the budget line item reflecting the disparate salary (which in our case, the decisionmaker himself created). (Tr.-Vol I, RE 77, Page ID # 1159). Or, the employer could say, "we paid her a lower salary because the position wasn't really needed," even though the job opening went through the formal approval channels and was publicly advertised – which undisputedly occurred here. (Tr.-Vol. I, RE 77-1, Page ID # 1150).

In *Corning Glass Works v. Brennan*, the Supreme Court faced a similar issue where the employer justified its pay differential on the basis that men would not accept the work at the lower pay whereas

18

women would.  417 U.S. 188, 205 (1974).  The Court held: "That the company took advantage of such a situation may be understandable as a matter of economics, but its [pay] differential nevertheless became illegal once Congress enacted into law the principle of equal pay for equal work." *Brennan*, 417 U.S. at 205.

The EPA mandates equal pay for equal *work*. It makes no allowance for employers who allocate less money to the job held by the female or who hire for positions they claim (after being sued) not to need.  29 U.S.C. § 206(d)(1) (2024).  *See also Washington County v. Gunther*, 452 US 161, 184 (1981) (Rehnquist, Stewart, and Powell, JJ., dissenting).  The trial evidence was insufficient to sustain Defendant's affirmative defense under a statute that "is broadly remedial and . . . should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve." *Brennan*, 417 U.S. at 208. Therefore, the Court should vacate the judgment with instructions to enter judgment in favor of Ms. Debity, or in alternative, order a new trial.

**ARGUMENT**

## Standard of Review

The Court applies the abuse of discretion of standard to the review of a district court's interpretation of a verdict rendered pursuant to Rule 49. *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 618 (6th Cir.2007). Under this standard, "conclusions of law are reviewed de novo and factual findings are reviewed for clear error." *U.S. v. Pauley,* 321 F.3d 578, 581 (6th Cir. 2003). A district court abuses its discretion "when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *In re Ferro Corp. Derivative Litigation*, 511 F.3d 611, 623 (6th Cir.2008).

Where a different standard of review governs a particular issue, Ms. Debity apprises the Court accordingly.

**I.    The trial court applied an incorrect legal standard in concluding that the jury's verdict was a special verdict rather than a general verdict with questions.**

A jury's role when deliberating a special verdict is only to decide facts, not decide who wins the case. "In simplest terms, the theoretical

distinction between general and special verdicts is that general verdicts require the jury to apply the law to facts, and therefore require the court to instruct the jury on the applicable law, whereas special verdicts require the jury to focus on its fact-finding role." Federal Trial Handbook: Civil § 25:1 (2023-2024 Edition). For the verdict to be "special," the jury must make "a special written finding on *each* issue of fact." Fed. R. Civ. P. 49(a)(1) (emphasis added). Thereafter, the trial court is tasked with applying the law to the jury's findings of fact and entering judgment thereon.

The Court in *Portage II v. Bryant Petroleum Corp.* discussed the differences between special verdicts and general verdicts with questions, the most obvious being whether the court instructed the jury as to the law. 899 F.2d 1514, 1520 (6th Cir. 1990). The Court said,

> Where special verdicts are involved, the jury's sole function is to determine the facts; therefore, neither an instruction on the law nor a summary concerning their role in relation to the law was necessary. If the written questions submitted to the jury were truly special verdicts, no instruction on the law, and certainly not one as detailed would have been given to the jury. The record plainly shows that the jury was instructed on the law in order to reach a verdict. . . . [This]

action contradicts [an] essential element of special verdict procedure.

*Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1521 (6th Cir. 1990) (cleaned up).

A general verdict with questions, in contrast, focuses the jury on the most significant factual issues it must decide in reaching its conclusions but still requires the jury to decide who wins according to the court's instructions of law. *Id.*

Here, there is no room for dispute that the court instructed the jurors on the law and required them to apply the law to the facts, thus rendering the lower court's conclusion clear error that ours was a special verdict. Among the court's instructions were:

- "And so, members of the jury, it is now time for me to instruct you about the law that you must follow in deciding this case."

- "You have two main duties as jurors. The first is to decide what the facts are from the evidence . . . . Your second duty is to take the law that I give you, apply it to the facts and decide if plaintiff has proven her claims[.]"

- "The issues for you to determine in this case are: one, whether plaintiff has established her discrimination claim . . . ; two, whether defendant has established . . .

that it relied on one or more legal justifications for any pay disparity; three, whether plaintiff has established her retaliation claim by a preponderance of the evidence; and, four, . . . if plaintiff prevails at trial on either of her claims, the amount of back pay, front pay and/or compensatory damages she may be entitled."

- "If plaintiff fails to meet this burden as to her claims, then your verdict on her claims must be for defendant."

- "After you determine the facts, you must apply the law that has been given to you . . . . You must decide the case solely on the evidence before you and according to the law given to you."

(Tr.-Vol. III, RE 82-1, Page ID # 1656-57, 1659, 1667).

Despite these unambiguous instructions, the lower court held that the jury returned a special verdict that resolved *only* issues of fact. (Mem. Op., RE 84, Page ID # 1692). Such holding constitutes an abuse of discretion because it is based on an incorrect legal standard: "The district court abused its discretion by construing the jury questions— which on their face were general verdicts with interrogatories—as special verdicts in order to obtain a favorable judgment for [defendant]." *Portage II*, 899 F.2d at 1524 (underline added).

23

a.    **The court's clear error matters because: (1) it enabled the court to ignore the obvious inconsistency in the jury's answers; (2) caused the court not to analyze the applicable section of Rule 49 or Ms. Debity's arguments asserted thereunder; and (3) caused the court to err further by eliminating part of the verdict to fix the inconsistency.**

Whether the verdict was special or general with questions has legal significance in our case. *See also Portage II*, 899 F.2d at 1524 ("[T]he record contains abundant indicia of judicial over-reaching on the special verdict issue, and it is reasonable to conclude that this conduct pervaded other aspects of the trial, including the new trial issue."). Federal Rule of Civil Procedure 49 contains separate subsections – (a) and (b) – that distinguish special verdicts from general verdicts with questions. Subsection (a) applies to special verdicts and subsection (b) applies to general verdicts with questions. *See* Fed. R. Civ. P. 49.

Within a special verdict rendered pursuant to subsection (a), trial courts have broader authority to enter judgment notwithstanding an inconsistency. *Portage II*, 899 F.2d at 1520. The rationale for the broader authority is that juries returning special verdicts are not instructed on the law, so the court is in the best position to craft a

24

judgment that matches the law to the jury's factual findings. *Id.* Notably, Rule 49(a) provides no other instructions or limitations as to how courts should address inconsistencies in the context of a special verdict. *See* Fed. R. Civ. P. 49(a).

District courts do not have such discretion when subsection (b) applies, however. Rule 49(b)(4) says:

> When the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, **judgment must not be entered;** instead, the court **must** direct the jury to further consider its answers and verdict, **or must order a new trial**.

Fed. R. Civ. P. 49(b)(4) (emphasis added). Likewise, the Sixth Circuit has held that "the trial judge is permitted *only* to return the jury for further consideration of its answers and verdict, or to order a new trial. Rule 49(b) gives the trial judge no authority to enter judgment for any party in this situation." *Bahamas Agr. Indust. Ltd. v. Riley Stoker Corp.*, 526 F.2d 1174, 1183 (6th Cir. 1975) (emphases added). *See also Hopkins v. Coen*, 431 F.2d 1055, 1059 (6th Cir. 1970) ("[W]here verdicts in the same case are inconsistent on their faces, indicating that the jury was either in a state of confusion or abused its power, a motion to alter or amend a judgment, for new trial, or for relief from the judgment, if timely made, is not discretionary.").

25

Although it must still strive to harmonize the jury's verdict if able reasonably to do so, it is not permitted to adopt a view of the verdict that assumes the jury disregarded the court's instructions as to the law. *Davis v. Yovella*, 110 F.3d 63 (6th Cir. 1997); *Portage II*, 899 F.2d at 1524. If a court can harmonize the jury's findings only by assuming the jury disregarded some aspect of the court's instruction, judgment must not be entered and/or a new trial must be granted. *See* § 25:4. Inconsistent general verdicts, Federal Trial Handbook: Civil § 25:4 (2023-2024 Edition). Such is a fundamental difference between subsection (a) and (b) in Rule 49.

Subsection (b) applies here because the jury was clearly instructed on the law and tasked with returning a verdict in favor of one party or the other. *Portage II*, 899 F.2d at 1524. The court's mischaracterization of the jury verdict was not harmless error because it caused the court to do what was not permitted – enter judgment on the inconsistent verdict and/or to thereafter deny Ms. Debity's timely motion for a new trial. (*See id.*).

           i.     **The error enabled the court to disregard the obvious inconsistency in the jury's verdict.**

26

A verdict is inconsistent when there is "no rational, non-speculative way to reconcile ... two essential jury findings." This is precisely what occurred here. *Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254, 1259 (11th Cir. 2015). "[W]hen only cacophony reigns, the verdict must be set aside." *Holloway v. McIntyre*, 838 F.2d 471 (6th Cir. 1988).

The Court's instructions to the jury made clear – repeatedly – that it could only set an amount of damages if the verdict was "in favor of the plaintiff." (Tr.-Vol. III, RE 82-1, Page ID # 1673-76). The verdict form repeated this prerequisite: "If your verdict is for the Plaintiff on either [claim], what is the amount of damages[?]" (Verdict Form, RE 61, Page ID # 342). The Court further conditioned an award of damages on a finding that Ms. Debity's losses were "because of the unlawful employment action" and were to be measured "[as] if she had not been discriminated and/or retaliated against by the Defendant." (Tr.-Vol. III, RE 82-1, Page ID # 1673-74) (underline added).

Here, there is no interpretation of the jury's answers that can be deemed consistent with each other or with the judgment; some combination will always be irreconcilable and thus fatally inconsistent. If Defendant proved its affirmative defense and Plaintiff failed to prove

27

retaliation, then the jury's verdict was not "in favor of the Plaintiff" or compliant with the court's instructions, such that Ms. Debity could not have suffered a legal injury for which Defendant is liable in the amount of nearly $200,000.

Alternatively, the jury did return its verdict "in favor of the Plaintiff" and followed the Court instructions on damages, which means Defendant did not prove its affirmative defense and/or Plaintiff did prove her retaliation claim. There is no scenario by which the jury could have reached the verdict it did while also remaining faithful to the court's unambiguous instructions.

Yet, rather than maintain its stated intention not to enter judgment on the inconsistent verdict, the trial court reversed course upon concluding that the verdict was a special verdict – a conclusion made in error – and therefore allowed the court to simply reject half of the jury's findings. *But see Davis*, 110 F.3d 63 (6th Cir. 1997) (holding abuse of discretion to deny new trial where award of damages was inconsistent with jury's other findings); *Turyna v. Martam Const. Co., Inc.*, 83 F.3d 178 (7th Cir. 1996) ("<u>It would do just as much violence to the jury's factual findings to give primacy to its answer on the liability issue, ignoring its response on damages, as it would to do the reverse. *If*</u>

_this is a general verdict, it is fatally inconsistent_.") (emphases added).

Such was an abuse of discretion.

### ii. The error caused the court not to analyze the applicable section of Rule 49 or Ms. Debity's arguments asserted thereunder.

Despite Debity's showing that Rule 49(b) governed, the trial court confined its analysis to case law involving special verdicts rendered pursuant Rule 49(a). (Mem. Op., RE 84, Page ID # 1694-95). The court relied most heavily on the Seventh Circuit case _Freeman v. Chicago Park District_ "where another jury answered a special verdict form in a manner similar to the jury in this case." (_Id._, Page ID # 1695).

_Freeman_'s verdict, though, is distinguishable in two critical ways: First, "[t]he district court and the parties _agree[d]_ that the verdict forms . . . were special verdict forms under Rule 49(a)," which the Seventh Circuit accepted. _Freeman_, 189 F.3d 613, 615 (7th Cir. 1999) (emphasis added). Second, the verdict form allowed the jury to find that behavior _other_ than illegal harassment could have caused plaintiff's damages. _Id._ With the additional acknowledgment that "the term 'damages' in the context of a special verdict has a more limited meaning than in a general

verdict,"[4] the Seventh Circuit relied on these distinguishable facts and a different section of Rule 49 to conclude it could harmonize the special verdict. *Id.*

Such is not the scenario here. Unlike in *Freeman*, our jury was not asked to return a special verdict for the reasons addressed. Nor was the jury given an option of rendering an advisory opinion that Ms. Debity's harms were ***not*** due to Defendant's illegality. The record proves quite the opposite. The court instructed the jury:

> If you find in favor of the plaintiff, then you must set an amount of money that will fairly and justly compensate her for the wages and benefits she reasonably would have earned if she had not been discriminated and/or retaliated against by the defendant, as well as other economic losses she suffered because of the unlawful employment action.

(Tr.-Vol. III, RE 82-1, Page ID # 1673-74) (underlines added). The court proceeded to define the time period of back pay damages as "the date the discrimination and/or retaliation occurred through the date of your verdict." (*Id.*, Page ID # 1674) (emphasis added). It further instructed:

---

[4] This recognition by the Seventh Circuit lends further support to Debity's argument that the district court was not authorized to carve away the jury's finding of damages since ours was a general verdict with questions.

"If you do find in the plaintiff's favor on either her discrimination or retaliation claim, you must make some award of back pay." *Id*.

As to the remedy of front pay, the court instructed:

> Another category of damages that you must consider <u>if you return a verdict in the plaintiff's favor</u> is called front pay. . . . You are not required to make an award of front pay even if you return a verdict in the plaintiff's favor. However, if you find by a preponderance of the evidence that plaintiff is entitled to front pay, you must set an amount that fairly and reasonably compensates her for these losses from the date of your verdict through whatever point in time you believe these losses will accrue as a result of the defendant's actions.

(*Id*. at Page ID # 1674-75).

On the issue of compensatory damages, the court instructed:

> <u>If you find in favor of the plaintiff on either her discrimination or retaliation claim</u>, you should determine whether she has established by a preponderance of the evidence that she has suffered noneconomic harms and losses due to the defendant's actions, and, if so, the amount of money that will fairly and reasonably compensate her for these harms.

(*Id*. at Page ID # 1676).

To the extent any question remained on what the court meant by "if you find in favor of the plaintiff..." – a phrase used in its instructions

and on the verdict form preceding the damages question – the court explained:

> To find the defendant liable on one or both of the claims raised by the plaintiff, every one of you must agree that the plaintiff has proven her claims under the Equal Pay Act, Title VII and the Tennessee Human Rights Act by a preponderance of the evidence. To find defendant not liable on the Equal Pay Act, Title VII and the Tennessee Human Rights Act, every one of you must agree that the plaintiff has failed to prove her claims by a preponderance of the evidence.

(*Id.* at Page ID # 1680). The verdict form itself conditioned the jury's ability to award damages on "your verdict [being] for the plaintiff on either her discrimination or her retaliation claim[.]" (Verdict Form, RE 61, Page ID # 341-42).[5]

The lower court did not have to rely on another circuit's holding to find persuasive guidance. The same court from which our case originates, the Eastern District of Tennessee, faced a similar situation in *Neely v. Fox of Oak Ridge, Inc.* There the jury the found the defendant negligent but checked "no" as to whether its negligence was the legal

---

[5] Moreover, the jury made a significant award of front pay despite being instructed that it could deny front pay *even if* it returned a verdict in Ms. Debity's favor, thus bolstering the view that the jury believed and intended its verdict to be for Ms. Debity. (Tr.-Vol. III, RE 82-1, Page ID # 1675).

cause of plaintiff's injuries.  No. 3:05-C-V304, 2006 WL 2076797 (E.D. Tenn. July 24, 2006).  On the question of what damages plaintiff was entitled to recover, the jury answered "$30,000."  *Neely*, 2006 WL 2076797, at *1.

In ruling on the motion for new trial, the district court correctly found that the verdict was a general verdict with questions, not a special verdict.  *Id.*  It further held the jury's verdict to be inconsistent, opposite the conclusion reached by the same district court (but different judge) here.  *Id.*  It held,

> Clearly, the jury did not follow the law set forth in the jury charge, and therefore, the Court must conclude that the jury was confused when it completed the verdict form. [An] explanation . . . for the inconsistent verdict can only be accepted as resolving the inconsistency with the use of the Court's subjective interpretation of the meaning of the foreperson's comment.  However, the verdict of the jury must not be such that the subjective interpretation of the Court is required to discern it.

*Id.*

The court in *Neely* faced another unusual wrinkle that also exists in the present case:  a defective verdict form.  In that case, the court observed,

Neither party objected to the verdict form used in this case. The Court, however, finds the verdict form, which the court prepared, is deficient . . . .  First, the verdict form does not explicitly tell the jury not to answer question No. 3 if its answer to question No. 2 is "no" . . . . [The deficiency] perhaps confused the jury and contributed to the jury returning the verdict form as it did."

(*Id.* at Page ID # *3).  Our verdict form contains the *exact deficiency*, which neither party knew until after the jury was dismissed because the court did not tell the parties it changed the one they prepared.[6]  (*Compare* Parties' Verdict Form, RE 49, *with* Completed Verdict Form, RE 61, *and* Tr.-Vol. III, RE 79, Page ID # 1480-1484 [discussing changes to jury instructions but not verdict form]).

In ordering a new trial, the court poignantly observed: "The Court finds that the overriding issue is the integrity of the process itself. . . . Rule 49(b) states that a new trial may be ordered, and the Court finds that it must be so ordered in this case."  *Id.* (underline added).

_____

[6] Defendant raised this issue in response to Ms. Debity's motion for new trial.  (Def's Resp., RE 82, Page ID # 1647-50). Ms. Debity's position is that while the defective verdict form may have contributed to the inconsistency, this does not mean the verdict is any less inconsistent. Furthermore, the court's instructions were clear in terms of the jury's role and authority – just as they were in *Neely* – so the verdict form is just one more reason the Court can have no confidence in what the jury did or attempted to do.

The lower court should not have relied on an out-of-circuit case applying a different section of Rule 49 than the one governing the issue, especially when *Neely* is so closely on point and applies the correct legal standard. The court committed clear and reversible error. *See Portage II*, 899 F.2d at 1514.

> ### iii. The error as to the type of verdict caused the court to err further by eliminating part of the verdict to fix the inconsistency.

The district court concluded that it was authorized to accept the jury's answers as to liability and reject its finding of legal injury. Such is not the case.

A district court's duty to harmonize a jury verdict is not without limits. A critical constraint is that the verdict as interpreted must be consistent with the court's instructions. *Holloway v. McIntyre*, 838 F.2d 471 (6th Cir. 1988) (holding court's effort to reconcile verdict must "consider[ ] the particular instructions given"); *Johnson v. Howard*, 24 Fed. Appx. 480 (6th Cir. 2001) ("[T]he consistency of the jury verdict must be considered in light of the judge's instructions to the jury.")

(internal quotation marks omitted).  Judgment cannot be entered where the jury did not follow the law as instructed.[7]

No type of case gets closer to this being a bright-line rule than one arising under Title VII and its counterpart the Equal Pay Act.  The Supreme Court in *Albemarle Paper Co. v. Moody* provided a deft analysis of what an award of damages to a Title VII plaintiff represents:

> Title VII deals with *legal injuries* of an economic character occasioned by racial or other anti-minority discrimination. . . . And where a legal injury is of an economic character, the general rule is that . . . the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured.

*Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975).

An award of damages, particularly backpay, to a Title VII plaintiff represents the jury's finding of a <u>legal injury to be remedied</u>, not simply a factual finding of harm that can be ignored as the district court held here.  *C.I.R. v. Schleier*, 515 U.S. 323, 334-35 (1995) ("Title VII [is] not tortlike" because of differences in remedies).  The district court committed clear error when it chose to accept one of the jury's legal

---

[7] The district court correctly instructed the jury, "All instructions are equally important. . . .  You must follow all of the instructions and not single out some and ignore others."  (Tr.-Vol. III, RE 82-1, Page ID # 1657).

findings but reject the other, simply to avoid granting a new trial.  *See Watts v. United Parcel Service*, 378 Fed. Appx. 520, 535 (6th Cir. 2010) (ordering new trial when jury's award of damages was consistent with one answer on verdict form but inconsistent with others);  *Heil Co. v. Evanston Ins. Co.*, 690 F.3d 722, 728-29 (6th Cir. 2012) (denying defendant's motion to accept jury's finding on liability but reject finding of punitive damages because "we have no basis on which to credit the jury's liability finding instead of its finding on punitive damages[.]") (abrogated on other grounds); *Karl v. Burlington N. R. Co.*, 880 F.2d 68, 73 (8th Cir. 1989) (holding that resolving inconsistency would "require the court to speculate as to what the jury intended and replace the jury's judgment with its own.").

### b.    Plaintiff did not waive her entitlement to a new trial.

As she did below in her motion for new trial, Ms. Debity points the Court to caselaw holding that a party's failure to raise an objection to an inconsistent verdict before the jury is discharged can constitute waiver. *See, e.g., Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 618-19 (6th Cir. 2007).  The purpose of waiver is to prevent a party from misusing

procedural rules to obtain a new trial. *Radvansky*, 496 F.3d at 618. Here, the record is devoid of anything suggesting that Ms. Debity tried below or is trying now to misuse procedural rules to gain an unfair advantage or that she slept on her right to object. Waiver should not apply and would be unjust for a number of reasons.

First, courts that have found waiver did so when the party had "adequate opportunity to object but failed to do so," and Ms. Debity had no such opportunity. *Radvansky*, 496 F.3d at 618-19 (6th Cir. 2007); *Special Learning, Inc. v. Step by Step Academy, Inc.*, 708 Fed Appx. 842, 846 (6th Cir. 2017) (affirming waiver because court gave parties opportunity to address the court before jury was discharged, and thereafter "neither party commented or objected" when court said it found no inconsistencies in verdict form). *See also Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254, 1261 (11th Cir. 2015) (staking finding of waiver on fact that trial court gave counsel opportunity "orally before dismissing jury" and "ample time" thereafter to state objection).

The record confirms that the court noticed the inconsistency before the verdict was announced, called a recess to research the issue without telling the parties the reason, and dismissed the jury as soon as the verdict was read and the court-initiated polling completed. (Tr.-Vol.

IV, RE 70, Page ID # 944-45, 947-48).   The parties did not know the court imminently would dismiss the jurors without giving them an opportunity to object or opine about whether it was appropriate to do so.   *Id.*   Counsel had no opportunity to speak prior to the jurors' dismissal and exit from the courtroom, had not seen the verdict form to determine how/where the inconsistency originated, and had no opportunity to confer with the court or their respective clients about how to address it.  *Id.*

Even so, at the first occasion Ms. Debity's counsel had to address the court and share in its own concern over the inconsistency, counsel's first words were: "Motion for a new trial, but I guess that's something we'll have to do [now that the jury has been dismissed]." (*Id.*, at Page ID # 949). Defendant's counsel was similarly unable to take a position as to the verdict's (in)consistency or what the court's course of action should be.  *Id.*

For its part, the court was just as unsure.  Ms. Debity's counsel asked, "I guess I just didn't know if the Court has to accept a verdict that clearly is inconsistent with what the verdict form instructs," to which the district court said, "Well, I'm not quite sure of the answer to that at this

point in time either." (Tr.-Vol. IV, RE 70, Page ID # 950-51). Thereafter the court said it would not enter judgment on the inconsistent verdict:

> I'm not entering judgment at this time. I'm just entering the verdict form on the record. And to the extent that any post-trial motions would reflect that something else should be done with the verdict or where things have landed today, then the Court can take appropriate steps.

(*Id.* at Page ID # 951). *See also Holloway v. McIntyre*, 838 F.2d 471 (6th Cir. 1988) ("Where the inconsistency is so plain that it strongly suggests that the jury was confused or abused its discretion, we will not hold counsel to his failure to object.").

Second, Defendant did not raise the waiver argument below despite Ms. Debity's preemptively pointing out the negative authority in her opening brief. Defendant has thus waived the argument. *Ford v. County of Grand Traverse*, 535 F.3d 483, 490 (6th Cir. 2008) (holding party's waiver argument "is itself subject to waiver" if not raised below).

Last, the district court did not find that Debity had waived her right to challenge the inconsistent verdict. Because the trial court was in the best position to decide in the first instance whether Debity had sufficient opportunity to object in light of the court's own observations, this Court should not do now what neither Defendant nor the trial court felt was appropriate in the proceedings below. *Freed v. Thomas*, 976

40

F.3d 729, 741 (6th Cir. 2020) ("Typically, will not address issues unless ruled upon by the trial court below.") (internal quotation marks omitted).

For these reasons, this Court should not bar Ms. Debity from pursuing her meritorious challenge to what is an obvious inconsistency in the jury's verdict.

## II.    Federal Rule of Civil Procedure 60 provides another basis on which the district court should have granted Ms. Debity's motion for new trial based on the inconsistency.

A court may set aside a judgment that is based on mistake, voidness, or "any other reason that justifies relief." *See* Fed. R. Civ. P. 60(b)(1), (4), and (6).[8]  "[A] verdict that is contradictory and repugnant is void, and no valid judgment can be entered thereon." *Anthony v. Gator Cochran Constr., Inc.*, 702 S.E.2d 139, 140 (Ga. 2010) (applying

---

[8] The Court should utilize the de novo standard of review with respect to Ms. Debity's arguments under Rule 60(b)(4) that the underlying judgment is void or voidable. *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat,* 289 F.3d 434, 437 (6th Cir. 2002). *See also Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 108 (6th Cir.1995) (Distinguishing otherwise-applicable abuse of discretion standard because "if the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4).").

same legal principles to jury verdicts as applied in federal courts). Likewise, "where a judgment is predicated on a verdict award that is . . . not permissible by law, the judgment based thereon constitutes fundamental error." 49 C.J.S. Judgments § 62. *See also Wolff v. Allstate Life Ins. Co.*, 985 F.2d 1524, 1533 (11th Cir. 1993) ("[I]f the jury persists in returning an inconsistent verdict despite the instruction, the verdict cannot stand and the [party] is entitled to a new trial."); *Mercado v. Ahmed*, 974 F.2d 863, 866 (7th Cir. 1992) ("[V]erdicts returned in the same action which are legally inconsistent should be set aside and a new trial granted."); *Dixie Ohio Exp. v. Poston*, 170 F.2d 446, 448 (5th Cir. 1948) (A "self-contradictory [verdict] . . . should be set aside and a new trial granted.").

Here, the district court entered judgment in favor of the Defendant despite the jury's determination that Ms. Debity suffered a legal injury attributable to Defendant. (*Compare* Verdict Form, RE 61, Page ID # 342 *with Moody*, 422 U.S. at 418 (holding that award of backpay under Title VII reflects finding of legal, not just factual, harm). In the face of an inconsistency, "the trial judge is permitted only to return the jury for further consideration of its answers and verdict, or to order a new trial. Rule 49(b) gives the trial judge no authority to enter judgment for any

party in this situation." *Bahamas Agr. Indust. Ltd. v. Riley Stoker Corp.*, 526 F.2d 1174, 1183 (6th Cir. 1975). The lower court lacked legal authority to enter such a final judgment under applicable law, rendering the judgment void or voidable, or in any case, the inconsistency is the "any other reason that justifies relief." *See, e.g.*, 75B Am. Jur. 2d Trial § 1481 (Feb. 2024) ("The general rule is that verdicts which are inconsistent and irreconcilable must not be allowed to stand[.]").

### a. The trial court abused its discretion by not requiring the jury to reconsider its findings in light of the court's instructions or taking other remedial actions.

The abuse of discretion standard of review applies to Ms. Debity's remaining arguments under Federal Rule of Civil Procedure 60. *In re Ferro Corp. Derivative Litigation,* 511 F.3d 611, 623 (6th Cir.2008).

As shown, there is no dispute that the lower court recognized the verdict's inconsistency when seeing the verdict form and called a recess to research the matter – before announcing the verdict. (Tr.-Vol. IV, RE 70, Page ID # 944-45). The court's opinion that an inconsistency existed persisted after its research and before (and after) dismissing the jurors. (*Id.* at Page ID # 948-52). Upon seeing it, the trial court could have and

43

should have instructed the jury to reconsider its answers in light of the court's previous instructions, or if not, to declare a mistrial. "Particularly where, as here, the trial court alone is aware of an inconsistency in verdicts, the primary duty to see that a verdict capable of supporting a judgment is returned rests with the trial court." *Hopkins v. Coen*, 431 F.2d 1055, 1059 (6th Cir. 1970); *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 574 (6th Cir. 2019) ("[W]hen a jury returns an inconsistent verdict, the trial court should "poll the jury or send it back to the jury room to further deliberate with appropriate instructions to bring back consistent verdicts."). *See also* Fed. R. Civ. P. 49(b)(3)(B).

Had neither of those options seemed appropriate, the trial court should have allowed the parties the opportunity to see and consider what the court itself devoted 20 minutes to researching. Or, at minimum, the court should have allowed counsel to address the issue before proceeding – directly and without notice – to announce the jury's dismissal. *Phillips Chem. Co. v. Hulbert,* 301 F.2d 747, 751 (5th Cir.1962) ("[Court's] discretion must be exercised in light of the circumstances under which the inconsistency arises."). *See also Reider*,

44

793 F.3d. at 1261 (noting that court gave counsel opportunity "orally before dismissing jury" and "ample time" thereafter to address issue).

For the court to do none of the things, and thereafter to deny Debity's timely request for a new trial, constitutes an abuse of discretion requiring reversal. *Hopkins*, 431 F.2d at 1059 (holding, "Since only the District Court was aware of the inconsistent verdict, we cannot understand why it, sua sponte, did not send it back to the jury room to further deliberate with appropriate instructions to bring back a consistent verdict," and granting new trial) (cleaned up).

## III. The district court erred in refusing to enter judgment for Ms. Debity as to Defendant's affirmative defense under the Equal Pay Act, or in the alternative, by denying her a new trial.

Ms. Debity challenges the sufficiency of the evidence for sustaining Defendant's burden of proof on the EPA's fourth affirmative defense; therefore, she appeals the lower court's denial of her motion brought under Federal Rules of Civil Procedure 50(b) and 59(a)(1)(A). (*See* Pl's Mot. for New Trial or JNOV, RE 72, Page ID # 998-999). The standard of review to applied to the denial of a Rule 50(b) motion is de novo, but the Court is to view the evidence in the light most favorable to the

45

verdict. *Gray v. Toshiba Am. Consumer Products, Inc.*, 263 F.3d 595 (6th Cir. 2001). As to Ms. Debity's request for relief under Federal Rule of Civil Procedure 59(a)(1)(A) – a counterpart to a Rule 50(b) motion – the Court employs the abuse of discretion standard. *Nolfi v. Ohio Ky Oil Corp.*, 675 F.3d 538 (6th Cir. 2012).

The defendant bears the burden of production and persuasion with respect to its affirmative defense under the Equal Pay Act. *Beck-Wilson v. Principi,* 441 F.3d 353 (6th Cir. 2006). In part because the EPA "is broadly remedial and . . . should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve," an employer's burden of proof as to these defenses "is a heavy one." *Id.*; *Corning Glass Works v. Brennan*, 417 U.S. 188, 208 (1974).[9] With the evidence adduced at trial and the law governing Equal Pay Act claims, the jury's (apparent) finding that Defendant met its burden of proof cannot stand.

---

[9] A plaintiff's success on an Equal Pay Act claim requires the same liability finding with respect to Title VII. *Kovacevich v. Kent St. Univ.*, 224 F.3d 806, 829 (6th Cir. 2000). If a defendant fails to meet its burden of proof on its affirmative defense under the EPA, it likewise fails under Title VII. *Korte v. Diemer*, 909 F.2d 954, 958-59 (6th Cir. 1990).

Being undisputed that the salary Defendant offered Ms. Debity was established by Trey Ferguson, Defendant relied on Ferguson to try to establish its affirmative defense. This makes the issue before the Court rather straightforward: Was Ferguson's explanation for the pay disparity sufficient to support a jury verdict? It simply was not.

Ferguson gave three reasons for the discriminatory salary. The Court should find that the first fails as a matter of law and the other two are woefully insufficient in light of Defendant's "heavy" burden of proof and the remedial interpretation that still must apply to this legal issue. *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595 (6th Cir. 2018) ("In finding that a jury's verdict was against the weight of the evidence, the [Court] must, to some extent at least, substitute [its] judgment . . . for that of the jury.").

Ferguson's primary explanation is that he only budgeted $60,000 for the position. (Tr.-Vol. III, RE 79, Page ID # 1531). This is not an excuse for pay discrimination; the Court should outright reject it. If the Equal Pay Act's protections could be circumvented simply by saying a non-discriminatory salary "wasn't budgeted," the Act would be impotent. But rather than feckless legislation, the Sixth Circuit says "the Equal Pay Act was intended as a 'broad charter of women's rights in the

47

economic field [and seeks] to . . . eliminate the depressing effects on living standards of reduced wages for female workers and the economic and social consequences which flow from it." *Beck-Wilson v. Principi*, 441 F.3d 353, 365 (6th Cir. 2006).   Therefore, even if the jury believed this explanation, it is inadequate as a matter of law to sustain Defendant's heavy burden of proof.   *See, e.g., Palmeri v. Goodwill Indus. of Middle TN*, No. 3:17-cv-00901, 2018 WL 4030571, at *6 (M.D. Tenn. Aug. 23, 2018) (relying on remedial purpose of EPA to find insufficient employer's generalized explanation of pay differential).

Another reason the budget argument fails is that Ferguson testified he consciously *chose* not to increase Debity's salary even after learning of the pay disparity.   (Tr.-Vol. III, RE 79, Page ID # 1532, 1553-54).   He testified that when Ms. Debity pointed out the discriminatory salary, he purposefully considered whether he could use funds from the instructional materials and supplies line items to increase the salary, but to do so would require him to take money from other previously budgeted priorities.   (*Id.*, at Page ID # 1531-32, 1552-54).   On cross examination, however, Ferguson admitted that on essentially *the same day* he chose not to provide Debity an equal salary, he notified the Board

48

that he had a _surplus_ of $207,625.00 he had been unable to spend.[10]
(*Id.*, at Page ID # 1555, and Tr. Exh. 59).  And in which budgetary line
items was the nearly quarter-million dollar surplus?  Instructional
materials and supplies.  *Id.*

Ferguson's evidence does not require a choice among alternatives
or weighing of the evidence.  He agreed he set Debity's salary,
consciously chose not to bring it into alignment with Ancel's because of
"the budget," admitted to having a $207,000 surplus he could not spend
despite trying to, and agreed he reported this to the board on or about
the same day he refused to remedy the discriminatory salary.  (*See
generally* Tr.-Vol. III, Page ID # 1544-1555).  If indeed the jury intended
to make such a finding on this record (which its verdict form contradicts,
in any event), it would constitute a seriously erroneous result.

Ferguson's second explanation is that Ancel's salary must have
been the product of negotiations undertaken because of a vacancy at the
time he hired Ancel.  (Tr.-Vol. I, RE 77, Page ID # 1112).  This explanation
also cannot sustain Defendant's burden of proof because (1) a vacancy –
publicly posted – also existed at the time of Debity's offer and

---

[10] And the year before he – meaning just his department - had a
$252,000 budget surplus.  (Tr.-Vol. III, RE 79, Page ID # 1554).

subsequent negotiations, and (2) Ferguson admits lacking personal knowledge that Ancel negotiated his salary, denies that he (Ferguson) ever negotiated with Ancel, and admits that only his (Ferguson's) signature (or his secretary's signature) was on Ancel's salary documentation. (*See* Tr.-Vol. I, RE 77, Page ID # 1112-13, and Tr. Exh. 15). Consequently, this evidence cannot sustain the finding that he "*specifically chose*" to pay Ancel a higher wage than the salary scale allowed, Debity a lower wage, or that he "actually did rely on" the stated reason of a vacancy. (*Compare* Tr.-Vol. III, RE 82-1, Page ID # 1671, emphasis added, *with Beck-Wilson*, 441 F.3d at 365).

The Court's instruction to the jury puts a finer point to this argument:

> It is not enough for you to find that the Defendant could have relied on one or more reasons for the pay disparity other than sex. You must be convinced by a preponderance of the evidence that Defendant actually did rely on the reason given.

(Tr.-Vol. III, RE 82-1, Page ID # 1672). The records shows an utter lack of *any* evidence on which Defendant could have met its burden of proof that it specifically chose and relied upon the stated reason(s).

Ferguson's third reason was that he experienced budgetary constraints posed by the unforeseen requirement that he replace a

retiring teacher at Coker Creek Elementary instead of replacing her with an aide.  (Tr.-Vol. I, RE 77, Page ID # 1174-75).  For purposes of appellate review, the Court should accept Ferguson's testimony as truthful.

Where his explanation falters, however, is on the issue of admitted timing. The only documentary evidence introduced at trial proves the issue arose in July 2021 – *two months after* Ferguson offered Ms. Debity the discriminatory salary. (Tr.-Vol. I, RE 77, Page ID # 1216, and Tr. Exh. 32).  Ferguson never disputed the accuracy of Exhibit 32's date.  *Id*. Likewise, his testimony was that Dr. Windsor approached him with the directive "sometime after the May board meeting"  (Tr.-Vol. III, RE 79, Page ID # 1533-34).  Ferguson further admits that he reposted the job (the one offered to Debity) on May 21, 2021, which he necessarily would not have done if already aware of the Coker Creek issue.  (Tr.-Vol. I, RE 77, Page ID # 1164-65).  Therefore, the *earliest* he could have relied on the unforeseen personnel matter would have been May 22, yet by May 22 Ferguson had already set Debity's salary, refused her request to bring it into alignment with Ancel's, and stopped communicating with her. (*See, e.g.*, Tr.-Vol. I, RE 77, Page ID # 1167-69).

Giving full credit to Ferguson's testimony establishes only that a personnel issue arose on or after May 22 and on or before July 8.  As a

matter of law, this after-the-fact development cannot be the legitimate business reason he chose a discriminatory salary weeks or months earlier. *Beck-Wilson*, 441 F.3d at 365.

### a. The district court did not identify any other evidence on which Defendant's affirmative defense could be sustained.

In a footnote the lower court said, "While [the Court] summarizes only Ferguson's testimony here, the Court has reviewed all of the testimony presented at trial, and it further finds that that the jury could have reasonably determined that Defendant had a legitimate reason based on a factor other than sex to offer Plaintiff less than a similarly-situated male[.]" (Mem. Op., RE 84, Page ID # 1700, FN 4).

If the trial court relied on other evidence or testimony, it was required to identify at least some of it as to allow for meaningful appellate review. *See, e.g.*, *Grover Hill Grain Co. v. Baughman-Oster, Inc.,* 728 F.2d 784, 792–93 (6th Cir. 1984) ("The findings should be explicit so as to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the grounds on which the trial court reached its decision."); *Zack v. C.I.R.*, 291 F.3d 407 (6th Cir. 2002) ("The findings are necessary . . . to reveal

the logic behind the trial court's decision.").  Instead, the court did not disagree with Debity's characterization of Ferguson's testimony or the trial evidence.  Ms. Debity should not be forced to speculate about the evidence the court found to justify Defendant's discriminatory salary when the evidence cited above legally, factually, and temporally could not.

To clarify, the trial court did recite aspects of Ferguson's testimony, Debity's employment history, Defendant's budget procedures, and various other facts elucidated during the trial.  (Mem. Op., RE 84, Page ID # 1701-05).  Where Ms. Debity takes exception is that none of these facts negate the legal insufficiencies shown above – i.e., temporal impossibility, Ferguson's admissions, the unrefuted documentary evidence, and the fallacy that "budgeting" a discriminatory salary is a valid excuse under the Equal Pay Act – or establish a new reason.[11]

---

[11] Ms. Debity is not advocating for a bright-line rule that budget constraints can never constitute "any other factor" under the Equal Pay Act.  Rather, her point is that budgeted discriminatory salaries are no less harmful to women or affronting to the EPA than non-budgeted ones, especially where, as here, the employer contemplated a female holding the job, and when confronted with the discrimination, refused to remedy it in the face of a $207,000 budget surplus.  (*See* Tr.-Vol. III, RE 79, Page ID # 1532-55).

Furthermore, Defendant expressly <u>declined</u>, after "much thought," to identify evidence it believed could support a verdict, deciding it "has no desire to engage in a tit-for-tat with Plaintiff regarding [trial] testimony[.]" (Def's Resp., RE 82, PageID # 1647).

As it stands, the record is devoid of evidence able to sustain Defendant's "heavy burden" overcoming the presumption of discrimination. The judgment entered in the court below must therefore be vacated and a new judgment entered in Ms. Debity's favor, or in the alternative, an order granting her a new trial.

## **CONCLUSION**

The lower court tried to salvage the jury's inconsistent verdict that should have been remedied while the jury was still empaneled.   In so doing the court applied an incorrect legal standard to conclude the verdict constituted only findings of fact that could be extricated so as to make it appear no inconsistency exists; failed to apply the correct legal standard set forth in a different section of Rule 49; relied upon an inapposite case from the Seventh Circuit; and denied Ms. Debity's timely motion for a new trial.   The trial court's conclusions of law, its actions and inactions with respect to the inconsistency, and the carving-up of the jury's verdict constitute an abuse of discretion.

Also to avoid granting a new trial, the lower court upheld the purported finding of the jury that the evidence was sufficient to find that Defendant met its heavy burden of proof.   However, Defendant expressly refused to point to any such evidence in response to the motion for judgment notwithstanding the verdict, and the court likewise did not disagree with Ms. Debity's summary of the evidence or point to other evidence it believed to be sufficient.   As the record stands, Ms. Debity's arguments are unrefuted, and the evidence is indeed

insufficient to support judgment in Defendant's favor as to its affirmative defense.

Appellant Marina Debity respectfully requests that the lower court's denial of her motion for new trial or judgment as a matter of law be REVERSED and the case REMANDED for a new trial, or in the alternative, that judgment be entered in her favor on her claims under the Equal Pay Act and Title VII, and that damages be set at the amount found by the jury to represent her legal injury.

RESPECTFULLY SUBMITTED,

 s/ Jesse D. Nelson
JESSE D. NELSON (BPR # 025602)
CLINT J. COLEMAN (BPR # 038413)
NELSON LAW GROUP, PLLC
10263 Kingston Pike
Knoxville, TN 37922
(865) 383-1053
jesse@NLGattorneys.com
clint@NLGattorneys.com

*Attorneys for Appellant Marina Debity*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32 (a)(7)(C) of the Federal Rules of Appellate Procedure, the undersigned certifies that the countable portion of Appellant's Brief contains approximately 11,619 words in a proportional font.

## CERTIFICATE OF SERVICE

I certify that the foregoing Brief of Appellants was served via the Appellate Court's ECF Filing System on all parties directed and authorized to receive such service, as shown on the ECF filing receipt, on this 7th day of May, 2024.

_s/ Jesse D. Nelson_
Attorney for Appellant

## DESIGNATION OF DISTRICT COURT DOCUMENTS

1.    Complaint, RE 1, Page ID # 1-14

2.    Defendant's Answer, RE 12, Page ID # 35-39

3.    Exh. 8 to Def's Motion for Summary Judgment, RE 32-2, Page ID # 107-115

4.    Pl's Resp. to Motion for Summary Judgment, RE 37, Page ID #131-145

    a.   Exh. 1 to Pl's Resp., Ferguson Dep., RE 37-1, Page ID # 146-204

    b.   Exh. 4 to Pl's Resp., April 20 job posting, RE 37-4, Page ID # 242

    c.   Exh. 5 to Pl's Resp., May 21 Reposting, RE 37-5, Page ID #243

    d.   Exh. 6 to Pl's Resp., Emails with Windsor, RE 37-6, Page ID #244-245

    e.   Exh. 7 to Pl's Resp., Second Em. to Windsor, RE 37-7, Page ID # 246

    f.   Exh. 11 to Pl's Resp., July 9 Job Posting Memo, RE 37-11, Page ID # 252

    g.   Exh. 12 to Pl's Resp., Ems. with Ferguson, RE 37-12, Page ID # 253

    h.   Exh. 13 to Pl's Resp., Salary Scale, RE 37-13, Page ID # 254-255

    i.   Exh. 14 to Pl's Resp., Ancel's Salary, RE 37-14, Page ID # 256

5.    Stipulated Jury Verdict Form, RE 49, Page ID #300-301

6.    Exhibit List, RE 52, Page ID #306-310

7.    Verdict Form completed by jury, RE 61, Page ID # 341-342

8.    Final Judgment, RE 66, Page ID # 721-722

9.    Transcript, Volume IV of IV, RE 70, Page ID # 943-953

10.   Excerpt of Trial Proceedings, RE 71, Page ID # 954-997

11.   Pl's Mot. for New Trial or JNOV, RE 72, Page ID # 998-999

12.   Mem in Support of Pl's Mot for New Trial, RE 73, Page ID # 1000-1012

13.   Transcript, Volume I, RE 77, Page ID # 1019-1226

14.    Transcript, Volume II, RE 78, Page ID # 1227-1477

15.   Transcript, Volume III, RE 79, Page ID # 1478-1641

16.   Def's Resp. to Motion for New Trial or JNOV, RE 82, Page ID # 1646-1654

17.   Pl's Reply to Def's Resp. to Motion for New Trial, RE 83, Page ID #1683-1688

18.   Memorandum and Order, RE 84, Page ID # 1689-1708

19.   Notice of Appeal, RE 85, Page ID # 1709-1710