---

## CASE NO. 24-5137

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

MARINA DEBITY,
Plaintiff/Appellant,

v.

MONROE COUNTY, TN BOARD OF EDUCATION
Defendant/Appellee,

---

**Appeal from the United States District Court**
**for the Eastern District of Tennessee**
**(E.D. Tenn. No. 3:22-cv-00006)**

---

**BRIEF OF DEFENDANT/APPELLEE**
**MONROE COUNTY, TN BOARD OF EDUCATION**

---

Arthur F. Knight, III
TAYLOR & KNIGHT, GP
800 South Gay Street, Suite 600
Knoxville, Tennessee 37929
(865) 971-1701
Aknight@taylorknightlaw.com

*Counsel for Defendant/Appellee Monroe County, TN Board of Education*

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS</u><br><u>AND FINANCIAL INTEREST</u>

Pursuant to Sixth Circuit Rule 26.1, Defendant/Appellee Scott County, Tennessee makes the following disclosures:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?


ANSWER:  No.

If the answer is yes, list below the identity of the parent corporation or affiliate

and the relationship between it and the named party.

ANSWER:  N/A

2.      Is there a publicly owned corporation, not a party to the appeal, that has

a financial interest in the outcome?

ANSWER:  No.

If the answer is yes, list below the identity of such corporation and the nature

of the financial interest.

ANSWER:  N/A


*/s/Arthur F. Knight, III*                                        _____
Arthur F. Knight, III                                                Date

# **TABLE OF CONTENTS**

Disclosure of Corporate Affiliations and Financial Interest ............................ i

Table of Authorities ........................................................................... iii

Statement Regarding Oral Argument ................................................ v

Jurisdictional Statement .................................................................. 1

Statement of Issue(s) for Review .................................................... 2

Statement of the Case ..................................................................... 3

Summary of Argument .................................................................... 5

Argument ........................................................................................ 8

      I.     Standard of Review ................................................. 8

      II.    Plaintiff/Appellant failed to demonstrate a violation .................. 9
            of her rights under the Equal Protection Clause
            of the Fourteenth Amendment.

Conclusion ..................................................................................... 19

Certificate of Compliance ............................................................... 20

Designation of Relevant District Court Documents ........................ 21

Certificate of Service ...................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

Barnes v. Owens-Corning Fiberglas Corp., 201 F.3d 815, 820-21 ......................7
(6th Cir. 2000)

Bates v. Dura Automotive Space Systems, Inc., 767 F.3d 566, 581 ....................7
(6th Cir. 2014)

Cummins v. BIC USA, Inc., 727 F.3d 506, 510 (6th Cir. 2013) .....................7, 8

Decker v. GE Healthcare, Inc., 770 F.3d 378, 391 (6th Cir. 2014) .....................7

Duncan v. Duncan, 377 F.2nd 49, 52 (6th Cir. 1967) ...........................................7

E.E.O.C. v. New Breed Logistics, 783 F.3d 1057, 1074 (6th Cir. 2015) ............8

Freeman v. Chi. Park Dist., 189 F.3d 613, 616 (7th Cir. 1999) .............. 11, 12, 13

Gallick v. Balt. & Ohio R.R. Co., 372 U.S. 109, 119 (1963). .............................11

Mason v. Ford Motor Co., 307 F.3d 1271, 1274 (11th Cir. 2002) ......................10

Pivnick v. White, Getgey & Meyer Co., LPA, 552 F.3d 479, 488........................8
(6th Cir. 2009)

Taylor v. TECO Barge Line, Inc., 517 F.3d 372, 387 (6th Cir. 2009)  ...............8

Watts v. United Parcel Serv., 378 F. App'x 520, 535 (6th Cir. 2010) ................10

**Federal Statutes**

28 U.S.C. §1291 ...................................................................................................1

28 U.S.C. §1331 ...................................................................................................1

42 U.S.C. §1983 ..................................................................................................1

**Rules**

Fed. R. App. P. 25 ................................................................22

Fed. R. App. P. 32 ................................................................20

Fed. R. App. P. 34 .................................................................v

6th Cir. I.O.P. 25 ................................................................22

6th Cir. Rule 26 ................................................................. i

**Constitutional Provisions**

U.S. Const. Amend. XIV .......................................................1

## STATEMENT REGARDING ORAL ARGUMENT

It is respectfully submitted that oral argument is unnecessary in accordance with the standards set forth in Tennessee Rule of Appellate Procedure 34.

This matter was extensively litigated, and tried to a jury verdict and Plaintiff/Appellant filed a Motion to Set Aside Judgment and for a New Trial, or in the alternative, for Judgment Notwithstanding the Verdict. Plaintiff/Appellant's primary challenge to the decision below stems from the jury charge the District Court gave based upon the evidence presented. The trial transcript, as well as the jury charge, and verdict form have been filed with the Court.

Accordingly, is respectfully submitted that the issues are adequately presented in the record and the briefs already before the Court. It is respectfully submitted that the record speaks for itself and little, if any, aid would be had by oral argument.

## STATEMENT OF JURISDICTION

The United States Court of Appeals for the Sixth Circuit has subject matter jurisdiction over the case and controversy presented herein pursuant to 28 U.S.C. §1331, federal question, as the subject matter for this case and controversy arises for the Equal Pay Act, Title VII of the Civil Rights Act of 1964, and the Tennessee Human Rights Act.

The United States Court of Appeals for the Sixth Circuit has appellate jurisdiction over the case and controversy presented herein pursuant to 28 U.S.C. §1291, as the Court of Appeals for the Sixth Circuit exercises supervisory authority for the United States District Court for the Eastern District of Tennessee, and 28 U.S.C. §1291 grants exclusive jurisdiction to the United States Court of Appeals regarding an appeal of a decision of the District Court of the United States.

Appellate jurisdiction stems from the entry of a final judgment in this matter following a jury trial that began on May 22, 2023. On May 25, 2023, The jury found in favor of Defendant/Appellee and against Plaintiff/Appellant. [Jury Verdict, RE 61, page ID 341-342] The District Court entered a judgment based upon the jury verdict on May 26, 2023. [Final Judgment, RE 66, page ID 721-722]

## STATEMENT OF THE ISSUES

1.    Was the District Court correct in entering a judgment in favor of the Defendant/Appellee based upon the jury verdict form May 25, 2023?

2.    Was the District Court correct in denying Plaintiff/Appellant's Motion to Set Aside Judgment, and for New Trial, or in the alternative, Motion for Judgment Notwithstanding the Verdict?

## STATEMENT OF THE CASE

Plaintiff/Appellant filed her Complaint January 5, 2022, in the United States District Court for the Eastern District of Tennessee, bearing a civil action number 3:22-CV-0006-JEM. [Complaint, RE 1, page ID #1-7]. The Plaintiffs/Appellants filing alleged violations of her rights with regard to her pay brought in accordance with the Equal Pay Act, Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act. [Complaint, RE 1, page ID #1-7]

The undersigned represented Defendant/Appellee Monroe County Board of Education. Defendant/Appellee Monroe County Board of Education timely answered denying liability on February 14, 2022. [Answer, RE 12, page ID #35-39]

The scope of discovery ensued interrogatories and request for production of documents being submitted and depositions conducted.

The Final Pretrial Order was executed and signed by the District Court on March 23, 2023 [Parties Pretrial Order, RE 45, page ID 299-283]

This matter proceeded to trial on May 22, 2023 on whether Defendant/Appellee was liable to Plaintiff/Appellant for a unequal pay in violation of Equal Pay Act, Title VII of the 1964 Civil Rights Act and the Tennessee Human Rights Act. The trial concluded May 25, 2023 to a jury verdict finding in favor of Defendant/Appellee and against Plaintiff/Appellant. [Jury Verdict, RE 61, page ID #341-342] The Court entered judgment based upon the jury verdict May 26, 2023.

[Final Judgment, RE 66, page ID #721-722]

Plaintiff/Appellant filed a Motion to Set Aside Judgment and for New Trial, or in the alternative, for Judgment Notwithstanding the Verdict on June 13, 2023. Motion, RE 73, page ID 1000-1012].  Defendant/Appellee responded in opposition and the Court entered a Memorandum and Order denying Plaintiff's posttrial relief on January 26, 2024. [Order, RE 84, page ID # 1689-1708]

Plaintiff/Appellant filed a Notice of Appeal on February 15, 2024.  [Notice of Appeal, RE 85, page ID #1709]

## <u>SUMMARY OF THE ARGUMENT</u>

It is respectfully submitted that the Judgment be affirmed.

Respectfully, all questions answered by the jury mandated a finding of no liability under all theories referenced by the Plaintiff/Appellant. The fact that the jury assessed damages is inapposite. The jury was specifically instructed to do so by the form. The jury simply followed the instructions as dictated by the Court.

Specifically, irrespective of the jury's express finding of <u>no</u> liability, the form requested the jury still assess damages. (Emphasis added)  The form, prepared by the Court, was slightly incorrect, but totally harmless, as no need existed to assess damages after the finding of no liability. Nevertheless, that is what the form instructed the jury to do and it fulfilled the direction of the form.

The same does not translate into a finding by the jury for the Plaintiff/Appellant and/or call the same into question.

The jury's finding was unequivocal. It found no liability against Defendant/Appellant and the Court correctly entered a judgment in favor of Defendant/Appellee.

All arguments by Plaintiff/Appellant to the contrary are grounded in speculation. Candidly, even if one concluded or grudgingly indulged in Plaintiff/Appellant's mental gymnastics, is impossible upon this record, to delve inside the head of each and every juror. Plaintiff/Appellant's argument fails to even

subvert the thoughts of even one juror. She is simply asking this Court to speculate for the jury and grant her relief.

It is respectfully requested that the Judgment of the District Court be affirmed. The record clearly reflects judgment for Defendant/Appellee and it is respectfully submitted that the Plaintiff/Appellant has failed to present any compelling reason to the contrary.

It is respectfully submitted that the sole indicator of juror intent is the questions answered by the jury on the verdict form. In that regard, the jury clearly found no liability and the District Court correctly entered judgment on the jury's verdict.

# LAW AND ARGUMENT

## I.   Standard of Review

Jury verdicts are entitled to great deference. "Appeals courts uphold jury verdicts unless contrary to the 'clear weight of the evidence.'" Bates v. Dura Automotive Space Systems, Inc., 767 F.3d 566, 581 (6th Cir. 2014) (citing Barnes v. Owens-Corning Fiberglas Corp., 201 F.3d 815, 820-21 (6th Cir. 2000)) The Sixth Circuit's review reduces the test of objective reasonableness and asks whether a "reasonable juror could reach the challenged verdict"; the court will not "reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions." Id. (citing Barnes, 210 F.3d at 821) (quoting Duncan v. Duncan, 377 F.2nd 49, 52 (6th Cir. 1967)

Recognizing the rejection of the jury's verdict, Plaintiff/Appellant seeks to alter the standard of review by attacking the district court's jury instructions. Yet the failure to give an instruction is reviewed under an abuse of discretion standard. Decker v. GE Healthcare, Inc., 770 F.3d 378, 391 (6th Cir. 2014) (quoting Cummins v. BIC USA, Inc., 727 F.3d 506, 510 (6th Cir. 2013) (citing Taylor v. TECO Barge Line, Inc., 517 F.3d 372, 387 (6th Cir. 2009) "A district court's refusal to give a jury instruction constitutes reversible error only if (1) the omitted instruction is a correct statement of the law, (2) the instruction is not substantially covered by other delivered charges, and (3) the failure to give the instruction impairs the requesting

party's theory of the case." Id. (quoting Cummins, 727 F.3d at 510) (quoting Taylor, 517 F.3d at 387)

Further, even an erroneous instruction will not succeed in reversing an otherwise sound jury verdict. In that situation, the Sixth Circuit "assesses whether, taken as a whole, the instructions adequately informs the jury of the relevant considerations and provide the jury with a sound basis in law with which to reach a conclusion." E.E.O.C. v. New Breed Logistics, 783 F.3d 1057, 1074 (6th Cir. 2015) (quoting Pivnick v. White, Getgey & Meyer Co., LPA, 552 F.3d 479, 488 (6th Cir. 2009). "Erroneous jury instructions only require reversal if they are confusing, misleading, and prejudicial." Id. (citing Pivnick, 552 F.3d at 488). Further, "[a]n erroneous jury instructions should not be reversed where the error is harmless." Id., at 1074-75 (citing Pivnick, 552 F.3d at 488)

## II.     Plaintiff/Appellant failed to demonstrate a violation of her rights under the any of the theories alleged in the Complaint.

As the District Court clearly reasoned, Plaintiff/Appellant's claims with respect to the jury verdict form are not only without merit, but respectfully represent Plaintiff/Appellant's disappointment and the jury's clear findings.

Question 1(b) reflects the jury's clear finding that factors "other than sex" resulted in the Plaintiff/Appellant's pay disparity and the factors articulated by the Defendant/Appellee were clearly legitimate as well as appropriate. Plaintiff/

Appellant does not even challenge the fact that zero facts existed that she was retaliated against by Defendant/Appellee. In fact, the facts presented compelled the opposite conclusion. Plaintiff/Appellant fails to satisfactorily recognize that her failure to complain about the jury charge she herself approved prior to the submission of her claim(s) to the jury subverts her newly invented argument to this Court.

What Plaintiff/Appellant does complain about is the verdict form. Plaintiff/Appellant has thrown the proverbial book of the Federal Rules of Civil Procedure, seeking some way to reconcile, however difficult Plaintiff/Appellant desires to make it, the jury's clear finding of no liability with its award of damages.

Plaintiff/Appellant has cited Federal Rules of Civil Procedure 49, 50, 59, and 60 in an attempt to accomplish what it euphemistically considers to be inconsistent, but, in reality, the correct decision. Plaintiff/Appellant's arguments are simply not grounded in the happenings at trial.

One merely needs to look at the verdict form instructions to see why the jury did what it did. The jury answered "yes" to question 1(b).  That should have ended the inquiry.  The form simply did not instruct the jury that if it answered "yes" to question 1(b) it need not go further. This omission was a simple mistake. As a result, the jury, apparently feeling obligated, went about and answered questions regarding damages.

The same is akin to an advisory opinion. In other words, had the jury found liability, then it would have awarded the damages outlined in the verdict form. The same is akin to O.J. Simpson's controversial manuscript "If I did it", this is how I would have murdered Nicole Brown Simpson and Ronald Goldman. So if the jury had found ability, which it did not, these are the amounts it may have awarded.

Granted, the advisory nature of the verdict was unusual. Yet it does not change the fact that the jury unequivocally and clearly found no liability on the part of Defendant/Appellee under either question 1 or 2. The instruction of the form may be unfortunate, but entirely consistent.

Accordingly, is respectfully submitted that the District Court entry of judgment be affirmed without regard to the spurious arguments of the Plaintiff/Appellant.

Yet, to address Plaintiff/Appellant's argument, Defendant/Appellee would show the Court as follows.

In a special verdict form, it is the jury's "sole function []to determine the facts; the jury needs no instruction on the law because the court applies the law to the facts as found by the jury." Mason v. Ford Motor Co., 307 F.3d 1271, 1274 (11th Cir. 2002); see also Watts v. United Parcel Serv., 378 F.App'x 520, 535 (6th Cir. 2010). "[T]he term 'damages' in the context of a special verdict has more limited meaning than in a general verdict: it refers to the loss suffered by the plaintiff, a question of

fact." <u>Freeman v. Chi. Park Dist.</u>, 189 F.3d 613, 616 (7th Cir. 1999). "The legal

conclusion, that the defendant is liable for the amount of the loss, will depend on the

judge's application of law to the facts as they are found by the jury." *Id.*, (citing

Wright & Miller, 9A Federal Practice & Procedure §2510 n.13 & text accompanying

(1995 & Supp. 1999)).

In answering the questions presented to them related to Plaintiff's claim for

unequal pay under the EPA, Title VII, and THRA, the jury found 3 facts: (1) that

Defendant used a lower scale to determine Plaintiff's wage than used for a male's

wage; (2) which caused Plaintiff to suffer damages or loss in the total amount of

$195,046.50; and (3) that the pay disparity was due to a factor other than sex that

was specifically chosen for a legitimate purpose. [Doc. 61]. The court has a

"duty…to attempt to harmonize the [jury's] answers, if it is possible under a fair

reading of them." <u>Gallick v. Balt. & Ohio R.R. Co.</u>, 372 U.S. 108, 119 (1963). It

"must attempt to reconcile the jury's findings, by exegesis if necessary…before [it

is] free to disregard the jury's special verdict and [set] the case for a new trial." *Id.*

As the Court found, no doubt exists that the jury's answers and the court's

entry of judgment in favor of the Defendant/Appellee, are reconcilable under the

applicable law for claims of unequal pay. Obviously, the jury found Defendant used

a lower scale to set Plaintiff/Appellant's wage than it used to set the wage for a male

in the same position, and it went on, pursuant to the directions of the special verdict

form only, to find Plaintiff/Appellant's amount of loss. However, and impartially, the jury also found that the Defendant showed the pay disparity was due to a factor other than sex that was specifically chosen for a legitimate purpose. As a result, Defendant/Appellee was indisputably entitled to judgment as a matter of law.

In order to dispel Plaintiff/Appellant's unsubstantiated feelings of injustice, the Court cited the Plaintiff in its ruling on the Plaintiff's Motion for New Trial the case of Freeman v. Chicago Park Dist., 189 F.3d 613, 614 (7th Cir. 1999). In that case, the plaintiff, Mary Freeman, worked for the Chicago Park District and was fired as a part of a reduction in workforce program. She claims she was "discharged on account of her race." *Id.* The jury answered a special verdict form consisting of 6 questions. *Id.* 615 The jury answered "yes" to the first question, which asked whether it found "from a preponderance of the evidence that the defendant Chicago Park District harassed plaintiff Mary Freeman while she was employed by the defendant." *Id.* It answered "no" to the next 3 questions, which asked whether it found from a preponderance of the evidence that "race was one of the reasons that defendant Chicago Park District harassed plaintiff Mary Freeman while she was employed by defendant;" "that race was one of the reasons that Chicago Park District discharged plaintiff Mary Freeman from employment by defendant", and "that defendant Chicago Park District retaliated against plaintiff Mary Freeman for her complaints of discrimination, including the filing of a charge of discrimination with

12

the EEOC." *Id.* The form then asked in question 5 "if your answers to any of the questions 1 to 3 or 4 is yes, what amount of damages did plaintiff Mary Freeman suffer as a result of defendant Chicago Park District's harassment, termination and/or retaliation?" *Id.* The jury answered "$45,000." *Id.* The final question asked whether the jury found, by a preponderance of the evidence, that the Chicago Park District terminated Ms. Freeman's employment for violating the code of conduct." *Id.* The jury answered "yes" in response. *Id.* Ms. Freeman alleged that the jury's finding of damages in the amount of $45,000 was "inconsistent with a finding of no racial motivation for harassment" and requested a new trial. *Id.* The district court found "as a matter of law, it is inconsistent for the jury to find that the plaintiff was civilly harassed and award damages" and it upheld the judgment by striking the award. *Id.* But on appeal, the Seventh Circuit found the special verdict form was not inconsistent despite the finding of damages:

> The jury found that the plaintiff was harassed (apparently for reasons other than those protected by Title VII) and suffered damages, or loss, in the amount of $45,000. However, the judge must enter a judgment for the defendant because the jury found the harassment was not motivated by racial prejudice, and therefore the plaintiff did not establish a Title VII violation.

*Id.,* at 616.

Likewise, in the instant case, the jury's answers to the question on the verdict form were not inconsistent, it was not inappropriate for the court to enter judgment in favor of Defendant/Appellee based upon their answers. See Fed. R. Civ. Pro. 58 (mandating that the court "promptly" enter judgment when the jury returns a special

13

verdict). Accordingly, Plaintiff's request for relief under Fed. R. Civ. Pro. 49 lacks merit.

Plaintiff's argument that Fed. R. Civ. Pro. 60 also provides Plaintiff/Appellant certain relief in this cause also lacks merit. Plaintiff/Appellant has simply failed to meet her burden as to any of the reasons set forth in Fed. R. Civ. Pro. 60, or the "catchall" provision. Plaintiff merely restates her argument under Rule 49, as well as 50 and 59, under another rule. The result should be the same. The court found the jury's answers to the question on the special verdict form consistent, they were consistent, and the judgment in favor of Defendant was appropriate under the application of relevant law.

Finally, Plaintiff seeks redress under Fed. R. Civ. Pro. 50 and 59. Plaintiff's request under Fed. R. Civ. Pro. 50 requires no further analysis from Defendant/Appellee. To indulge Plaintiff/Appellant, however, Defendant/Appellee will address Plaintiff's request under Fed. R. Civ. Pro. 59 only because Plaintiff makes the spurious suggestion that no evidence at trial could have supported the verdict and judgment for the Defendant/Appellee. Yet, Defendant/Appellee need only summarize the testimony of the director of exceptional intelligence, Trey Ferguson, to rebut Plaintiff's suggestion.

As an example already provided to Plaintiff/Appellant by the District Court, a mere summary of the deposition of Mr. Ferguson clearly demonstrates that the jury

could have reasonably determined that Defendant had a legitimate reason based on a factor other than sex to offer Plaintiff less than an allegedly similarly-situated male and that Defendant did not retaliate against her.

> As Director of Exceptional Education for Monroe County Schools, Ferguson is responsible for allocating the special education budget each school year [Doc. 77, pg ID# 1073-74]. Ferguson testified that he generally begins to put together the budget in the winter preceding the relevant school year and the school board passes a budget in March or April that will take effect in July [*Id.* at pg ID# 1075-76] If more money is needed on top of the budgeted amount, Ferguson said that he can submit a budget amendment to the school board [*Id.* at pg ID#1077].

> Typically, he said, Monroe County has four school psychologists on staff [*Id.* at pg ID# 1091; Doc. 79 pg ID# 1518]. Although the Finance Director or human resources department sets employees' salaries, Ferguson testified that, to his knowledge, psychologists' and teachers' salaries are determined by a schedule based upon each employee's degree and years of experience in the position [Doc. 77 pg ID# 1091]. The formula used to set a psychologist's salary is the same as that used for a teacher's salary, except multiplied by a factor of 1.3 [*Id.* at pg ID#1095-96]. Ferguson explained that this formula is used as a starting place for negotiations, but could change, for example, if a candidate elects to work for an additional ten or fifteen days per school year, in which case, the pay would increase to account for those days [*Id.* at pg  ID# 1094-97].

> Monroe County hired Ancel as one of the school psychologists for the 2019–2020 school year after he completed his internship with the county and applied for the position in March 2019 [*Id.* at pg ID# 1098-1101]. According to Ferguson, the Director of Schools for Monroe County did not require Ancel to interview for school psychologist because there were no other applicants for the position and he had recently been interviewed for the internship position [*Id.* at pg# 1102]. When Monroe County hired Ancel, his salary was calculated using the same salary as all school psychologists but at a base level of five years of experience, although he had no prior experience as a school psychologist [*Id.* at pg#1104-05]. Only two of the full-time school psychologists were staying on staff for the 2019–2020 school year, as the senior lead school psychologist was about to retire and another psychologist

was shifting to part time hours in order to go back to school to receive her doctorate [*Id.* at 1110, 1112, 1200; Doc. 79 pg# 1119-21]. Ferguson testified that he believes Ancel negotiated his salary to be paid at step five instead of step zero because Monroe County had only two out of four of its school psychologist positions filled, making it a "hard-to-staff position" [Doc. 77 pg# 1112]. Ancel's salary was calculated with a starting base of $44,197.00 [*Id.* at pg# 1119]. Accounting for the psychologist multiplier, 210 days' work, and five years of experience (step five), his salary was $60,328.00 for the 2019–2020 school year [*Id.*, at pg# 1108-09].

According to Ferguson, Plaintiff had been employed with Monroe County Schools since 2008 and was working as a special education teacher when Ferguson was hired as Director in 2013 [*Id.* at pg ID# 1108-09]. While working as a special education teacher, and also case manager eventually, Plaintiff returned to school in the spring of 2018 to earn her degree to become a school psychologist[*Id.* at pg ID# 1109]. During Plaintiff's schooling she was required to complete a one-year internship, which she did at Monroe County Schools during the 2020–2021 school year [*Id.*at pg ID# 1109–1110; Doc. 79 pp. 1520, 1522]. Ferguson testified that in order to complete her internship, Plaintiff had to vacate her teaching position because "she would not be able to do her school psychology internship and the case manager duties at the school" [Doc. 77 pg ID# 1133, 1201]. During her internship year, Plaintiff discussed with Ferguson her desire to become a full-time school psychologist with Monroe County [*Id.* at pg ID# 1201; Doc. 79 pg ID# 1523]. Initially, Ferguson told Plaintiff there were no open school psychologist positions for the next school year unless one of the four currently employed school psychologists resigned or the school board approved adding a fifth school psychologist[Doc. 79 pg ID# 1523].

By March 10, 2021, Ferguson had prepared the budget for the upcoming 2021–2022 school year [Doc. 77 pg ID# 1089]. Ferguson had budgeted to create a fifth school psychologist position because, he testified, Monroe County needed additional help as there were increasing numbers of students with disabilities and he also believed that Plaintiff would stay in Monroe County [Doc. 79 pg ID# 1524-25]. In order to have the funding to hire a fifth school psychologist, Ferguson decided to replace a retiring teacher at Coker Creek Elementary School with an assistant—a swap he believed was possible since Coker Creek is a small school with fewer than ten special education students, none of whom had severe cognitive impairments [*Id.* at pg ID# 1526-26, 1529]. The teacher who was retiring was paid about $54,000.00 [*Id.* at pg

16

ID# 1529-31] and an assistant would be paid $20,000.00 [*Id.* at 54; Doc. 77 pg ID# 1151]. In addition to this staff change, another teacher was nearing retirement, and Ferguson anticipated asking her to stay on as a part time teacher, which reduced her salary from $54,000.00 to $28,000.00 [Doc. 79 pg ID# 1531]. Between these two changes, $60,000.00 was available to pay a fifth school psychologist [*Id.*]. On April 8, 2021, the school board passed a budget for the 2021–2022 school year that included these changes in the line item details [Doc. 77 pp. 1145-46; Doc. 79 p. 1032]. Later in April, Ferguson received approval from Dr. Kristi Windsor ("Dr. Windsor"), the Director of Schools for Monroe County, to post the application for the open positions [Doc. 77 p. 1146]. Plaintiff applied for the school psychologist position on April 22, 2021 [*Id.* at 1150]. There were no other applicants as of April/May 2021 and the post was removed on May 12 because Ferguson planned to hire Plaintiff [*Id.* at 1151-1152].

Ferguson said that he told Plaintiff that her starting salary would be $58,944.80, calculated at step zero because Plaintiff did not have previous experience as a school psychologist [*Id.* at 1153]. Plaintiff asked if her one-year internship experience could be counted toward her salary [*Id.*]. Plaintiff also told Dr. Windsor that Plaintiff had an offer for a school psychologist position from Meigs County for about $66,000.00 and that she expected to receive an offer from Blount County for about $64,000.00 [*Id.* at 1165], but Plaintiff also told Dr. Windsor that if she could get $60,000.00 from Monroe County, "she would love to take it because she lived in Monroe County and wants to be there" [*Id.* at 1153-54, 1176]. Ferguson and Dr. Windsor offered Plaintiff a starting salary at step three for $61,077.56 for 210 days of work [*Id.* at 1154, 1155]. While there was only $60,000.00 budgeted for the school psychologist position that year, Ferguson said he could "shuffle some things out of, like, instructional supplies, which cuts into what teachers have for students" [*id.* at 141; Doc. 79 pp. 1331-32, 1351], and that he was willing to do this, even though, at that point, Plaintiff had only asked for step one because he "wanted her to have the job. . . . [Plaintiff] has been a great employee and . . . I wanted [her] to come and work for us. And so I went and got approval for Step 3 looking at our budget trying to give her everything we possibly could when we were already fully staffed with psychologists" [Doc. 77 pp. 1159-60]. Plaintiff then asked Dr. Windsor if she could get half of her teaching experience credited (five years) [*Id.* at 1158]. Ferguson believed that Monroe County did not "have the money in [the] budget to do beyond what [was] offered" [*Id.* at 1177] and therefore he reposted the job listing on May 21 because it was believed that Plaintiff would not take the offer [*Id.* at 1164-

66]. That post was removed on June 4 [*Id.* at 1168] because "the [school] board had requested that [Ferguson] reinstate [the] teaching position" at Coker Creek Elementary that he had planned to substitute with an assistant, which meant that he could not use the funding from the teaching position toward an additional school psychologist [*Id.* at 1174-75; Doc. 79 pp. 56–57]. An assistant would have been paid $20,000.00 but a teacher would be paid around $46,000.00, which cut into the $60,000.00 Ferguson had made available to hire a fifth school psychologist [Doc. 79 p. 1534].

In May 2021, Monroe County had $207,000.00 in remaining funds near the end of the school year in part because they were unable to fill certain positions [*Id.* at 78; Doc. 77 pp. 1182, 1185]. Ferguson testified that this phenomenon is "pretty typical . . . at the end of the year for all departments to have remaining funds that have to be spent or shifted around" [Doc. 77 p. 1182]. This is because the budgeting is based on student needs [*Id.*]. "So you can't just say, oh, I think I'll do away with that position because we didn't have an applicant. We have to keep holding onto hope someone will apply, someone who is appropriately licensed will apply and provide those funds." [*Id.*].

The above summary is just some evidence of which the jury could have based a verdict for Defendant/Appellee.  It is quoted not only because the District Court referred to the same, but also because it clearly meets the standard to defeat Plaintiff/Appellant's post-trial motions predicated on the evidence at trial.  The point being that the jury could have easily based its verdict for the Defendant.

Accordingly, and respectfully the Judgment of the District Corut should be affirmed in all respects.

## **CONCLUSION**

For each and all the foregoing reasons, it is respectfully submitted that the judgment of the district court based upon the jury's verdict be affirmed in all respects.

RESPECTFULLY SUBMITTED this 27th day of June, 2024.

TAYLOR & KNIGHT, GP

*s/Arthur F. Knight, III*
Arthur F. Knight, III, TN BPR 016178
800 S. Gay Street, Suite 600
Knoxville, TN 37929
Phone: (865) 971-1701
aknight@taylorknightlaw.com
*Attorneys for Anderson County, Tennessee*

19

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4736 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman in 14 point font.

*s/Arthur F. Knight, III*
Arthur F. Knight, III, TN BPR 016178

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record | Description | Pages |
|---|---|---|
| 1 | Complaint, RE 1, Page ID# 1-7 | 3 |
| 12 | Answer, RE 11, Page ID#35-39 | 3 |
| 45 | Final Pretrial Order, RE 45, Page ID# 279-283 | 3 |
| 61 | Jury Verdict, RE 123, Page ID#341-342 | 3 |
| 66 | Judgment, RE 129, Page ID#721-722 | 3, 4 |
| 73 | Motion for New Trial, or in the alternative, Motion for Judgment Notwithstanding the Verdict, RE 73, Page ID#1000-1012 | 4 |
| 84 | Memorandum and Order, RE 84, Page ID#1689-1708 | 4 |
| 85 | Notice of Appeal, RE 85, Page ID#1709 | 4 |

## <u>CERTIFICATE OF SERVICE</u>

In compliance with Fed. R. App. P. 25 and 6 Cir. I.O.P. 25, I hereby certify that on this 27th day of June, 2024, I electronically filed with the Clerk's Office of the United States Court of Appeals for the Sixth Circuit this Brief. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served via regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

TAYLOR & KNIGHT, GP

*s/Arthur F. Knight, III*
Arthur F. Knight, III, TN BPR 016178
800 S. Gay Street, Suite 600
Knoxville, TN 37929
Phone: (865) 971-1701
aknight@taylorknightlaw.com
*Attorneys for Monroe County Board of Education*

22